## WYATT *v.* UNITED STATES.

No. 119.   Argued January 13, 1960.—Decided May 16, 1960.

*Robert R. Rissman* and *Fred Okrand* argued the cause for petitioner.   With *Mr. Rissman* on the brief was *A. L. Wirin.*

*Roger G. Connor* argued the cause for the United States.   With him on the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Beatrice Rosenberg* and *Kirby W. Patterson.*

MR. JUSTICE HARLAN delivered the opinion of the Court.

Petitioner was tried and convicted of knowingly transporting a woman in interstate commerce for the purpose

of prostitution, in violation of the White Slave Traffic Act, 18 U. S. C. § 2421. At the trial, the woman, who had since the date of the offense married the petitioner, was ordered, over her objection and that of the petitioner, to testify on behalf of the prosecution.[1] The Court of Appeals, on appeal from a judgment of conviction, affirmed the ruling of the District Court. 263 F. 2d 304. As the case presented significant issues concerning the scope and nature of the privilege against adverse spousal testimony, treated last Term in *Hawkins* v. *United States,* 358 U. S. 74, we granted certiorari. 360 U. S. 908. We affirm the judgment.

*First.* Our decision in *Hawkins* established, for the federal courts, the continued validity of the common-law rule of evidence ordinarily permitting a party to exclude the adverse testimony of his or her spouse. However, as that case expressly acknowledged, the common law has long recognized an exception in the case of certain kinds of offenses committed by the party against his spouse. *Id.,* at 75, citing *Stein* v. *Bowman,* 13 Pet. 209, 221. Exploration of the precise breadth of this exception, a matter of some uncertainty, see 8 Wigmore, Evidence (3d ed.), § 2239, can await a case where it is necessary. For present purposes it is enough to note that every Court of Appeals which has considered the specific question now holds that the exception, and not the rule, applies to a Mann Act prosecution, where the defendant's wife was the victim of the offense.[2] Such unanimity with respect

---

[1] Although the record is ambiguous as to the fact and time of petitioner's marriage, we shall consider established, as the Court of Appeals did, the sequence of events stated in the text. Further, the Court of Appeals noted that, while the record did not clearly establish that the petitioner, as well as his wife, claimed a privilege with respect to her testimony, it would assume that he had. 263 F. 2d 304, 308. We accept that assumption.

[2] *United States* v. *Mitchell,* 137 F. 2d 1006 (C. A. 2d Cir.); *Levine* v. *United States,* 163 F. 2d 992 (C. A. 5th Cir.); *Shores* v. *United*

to a rule of evidence lends weighty credentials to that view.

While this Court has never before decided the question, we now unhesitatingly approve the rule followed in five different Circuits. We need not embark upon an extended consideration of the asserted bases for the spousal privilege (see *Hawkins, supra,* at 77–78; Wigmore, *op. cit., supra,* § 2228 (3)) and an appraisal of the applicability of each here, *id.,* § 2239, for it cannot be seriously argued that one who has committed this "shameless offense against wifehood," *id.,* at p. 257, should be permitted to prevent his wife from testifying to the crime by invoking an interest founded on the marital relation or the desire of the law to protect it. Petitioner's attempt to prevent his wife from testifying, by invoking an asserted privilege of his own, was properly rejected.

*Second.* The witness-wife, however, did not testify willingly, but objected to being questioned by the prosecution, and gave evidence only upon the ruling of the District Court denying her claimed privilege not to testify. We therefore consider the correctness of that ruling.[3]

---

*States,* 174 F. 2d 838 (C. A. 8th Cir.), overruling *Johnson* v. *United States,* 221 F. 250; *Pappas* v. *United States,* 241 F. 665 (C. A. 9th Cir.) ; *Hayes* v. *United States,* 168 F. 2d 996 (C. A. 10th Cir.).

[3] The United States does not question the standing of petitioner to seek reversal because of the allegedly erroneous refusal to respect the privilege of his wife. Since such testimony, even if wrongly compelled, is *per se* admissible, *Funk* v. *United States,* 290 U. S. 371, and relevant, it has been argued that the party has suffered no injury of which he may complain. Wigmore, *op. cit., supra,* § 2196 (2) (a) ; McCormick, Evidence, § 73; Uniform Rules of Evidence, Rule 40; Am. L. Inst. Model Code of Evidence, Rule 234; Note, 30 Col. L. Rev. 686, 693–694. See, *e. g., Turner* v. *State,* 60 Miss. 351, 353. However, as the point has not been briefed or argued, we have thought it appropriate, in view of our disposition of the case on the merits, not to consider the issue of standing, and of course intimate no view on it.

The United States argues that, once having held, as we do, that in such a case as this the petitioner's wife could not be prevented from testifying voluntarily, *Hawkins* establishes that she may be compelled to testify. For, it is said, that case specifically rejected any distinction between voluntary and compelled testimony. 358 U. S., at 77. This argument fails to take account of the setting of our decision in *Hawkins*. To say that a witness-spouse may be prevented from testifying voluntarily simply means that the *party* has a privilege to exclude the testimony;[4] when, on the other hand, the spouse may not be compelled to testify against her will, it is the *witness* who is accorded a privilege. In *Hawkins,* the Government took the position that the spousal privilege should be that of the witness, and not that of the party, so that while the wife could decline to testify, she could not be prevented from giving evidence if she elected not to claim a privilege which, it was said, belonged to her alone. Brief for the United States, No. 20, O. T. 1958, pp. 22–43. In declining to hold that the party had no privilege, we manifestly did not thereby repudiate the privilege of the witness.

While the question has not often arisen, it has apparently been generally assumed that the privilege resided in the witness as well as in the party. *Hawkins* referred to "a rule which bars the testimony of one spouse against the other unless *both* consent," *supra,* at 78. (Emphasis supplied.) See *Stein* v. *Bowman, supra,* at 223 (wife cannot "by force of authority be compelled to state facts in evidence"); *United States* v. *Mitchell, supra,* at 1008 ("the better view is that the privilege is that of either spouse who chooses to claim it"); Wigmore, *op. cit., supra,* § 2241; McCormick, Evidence, § 66, n. 3. In its

---

[4] *Funk* v. *United States, supra,* abolished, for the federal courts, the disqualification or incompetence of the spouse as a witness, thus establishing the admissibility of his or her testimony, and leaving the question one of privilege only.

*Hawkins* brief, the Government, while calling for the abolition of the party's privilege, urged that the common-law development could be explained, and its policies fully vindicated, by recognition of the privilege of the witness. Brief, pp. 22–25, 33, 42–43; see *Hawkins, supra,* at 77, and concurring opinion, at 82. At least some of the bases of the party's privilege are in reason applicable to that of the witness. As Wigmore puts it, *op. cit., supra,* at p. 264: "[W]hile the defendant-husband is entitled to be protected against condemnation through the wife's testimony, the witness-wife is also entitled to be protected against becoming the instrument of that condemnation,—the sentiment in each case being equal in degree and yet different in quality." In light of these considerations, we decline to accept the view that the privilege is that of the party alone.

*Third.* Neither can we hold that, whenever the privilege is unavailable to the party, it is *ipso facto* lost to the witness as well. It is a question in each case, or in each category of cases, whether, in light of the reason which has led to a refusal to recognize the party's privilege, the witness should be held compellable. Certainly, we would not be justified in laying down a general rule that both privileges stand or fall together. We turn instead to the particular situation at bar.

Where a man has prostituted his own wife, he has committed an offense against both her and the marital relation, and we have today affirmed the exception disabling him from excluding her testimony against him. It is suggested, however, that this exception has no application to the witness-wife when she chooses to remain silent. The exception to the party's privilege, it is said, rests on the necessity of preventing the defendant from sealing his wife's lips by his own unlawful act, see *United States* v. *Mitchell, supra,* at 1008–1009; Wigmore, *op. cit., supra,* § 2239, and it is argued that where the wife has chosen

not to "become the instrument" of her husband's downfall, it is her own privilege which is in question, and the reasons for according it to her in the first place are fully applicable.

We must view this position in light of the congressional judgment and policy embodied in the Mann Act. "A primary purpose of the Mann Act was to protect women who were weak from men who were bad." *Denning* v. *United States,* 247 F. 463, 465. It was in response to shocking revelations of subjugation of women too weak to resist that Congress acted. See H. R. Rep. No. 47, 61st Cong., 2d Sess., pp. 10–11. As the legislative history discloses, the Act reflects the supposition that the women with whom it sought to deal often had no independent will of their own, and embodies, in effect, the view that they must be protected against themselves. Compare 18 U. S. C. § 2422 (consent of woman immaterial in prosecution under that section). It is not for us to re-examine the basis of that supposition.

Applying the legislative judgment underlying the Act, we are led to hold it not an allowable choice for a prostituted witness-wife "voluntarily" to decide to protect her husband by declining to testify against him. For if a defendant can induce a woman, against her "will," to enter a life of prostitution for his benefit—and the Act rests on the view that he can—by the same token it should be considered that he can, at least as easily, persuade one who has already fallen victim to his influence that she must also protect him. To make matters turn upon *ad hoc* inquiries into the actual state of mind of particular women, thereby encumbering Mann Act trials with a collateral issue of the greatest subtlety, is hardly an acceptable solution.

*Fourth.* What we have already said likewise governs the disposition of the petitioner's reliance on the fact that his marriage took place after the commission of the

offense.   Again, we deal here only with a Mann Act prosecution, and intimate no view on the applicability of the privilege of either a party or a witness similarly circumstanced in other situations.   The legislative assumption of lack of independent will applies as fully here.   As the petitioner by his power over the witness could, as we have considered should be assumed, have secured her promise not to testify, so, it should be assumed, could he have induced her to go through a marriage ceremony with him, perhaps "in contemplation of evading justice by reason of the very rule which is now sought to be invoked." *United States* v. *Williams,* 55 F. Supp. 375, 380.

The ruling of the District Court was correctly upheld by the Court of Appeals.[5]

*Affirmed.*

MR. CHIEF JUSTICE WARREN, with whom MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS join, dissenting.

Last Term this Court held that a wife could not voluntarily testify against her husband in a criminal prosecution over his objection. *Hawkins* v. *United States,* 358 U. S. 74.   The Court finds the case at bar so different from *Hawkins* that it approves overriding not only the husband's objection, but also the wife's.   In both cases the husband was prosecuted for violation of the Mann Act, 18 U. S. C. § 2421.   The only relevant difference is that here the wife herself was the person allegedly transported by the husband for purposes of prostitution.   Morally speaking, this profanation of the marriage relationship adds an element of the utmost depravity to the ugly business of promoting prostitution.   Legally speaking, however, this does not warrant the

---

[5] The petitioner's further assertion, that apart from the testimony of the wife there was insufficient corroboration of his admission of transportation, thus fails by its own assumption.

radical departure from the *Hawkins* rule which the Court now sanctions.

The Court's analysis of the problem here presented is sound in so many ways that the unsoundness of its conclusion is especially disappointing—and somewhat curious. Briefly, that analysis appears to be as follows: The Court accepts the principle that the spousal privilege belongs both to the person charged with the offense, as we held in *Hawkins*, and also to the witness. Moreover, the Court rejects the notion that the latter may be barred from asserting the privilege simply because, in a given case, it may be improper for the former to invoke it. The defendant may not claim the privilege where he is charged with "certain kinds of offenses committed . . . against his spouse," and the Court believes that the instant case involves this type of crime. It apparently recognizes, moreover, that the policy behind this exception may be effectuated in the ordinary situation by giving the injured party the *option* to testify, without *compelling* her to testify.[1] In this case, however, it con-

---

[1] Perhaps the Court is merely assuming this to be true *arguendo*. Since the basic purpose of the exception is to prevent the husband from abusing the wife with impunity, the assumption is amply warranted. See, *e. g., Lord Audley's Trial*, 3 How. St. Tr. 401, 402, 414 (1631); *Bentley* v. *Cooke*, 3 Doug. 422, 424 (1784) ("[T]hat necessity is not a general necessity, as where no other witness can be had, but a particular necessity, as where, for instance, the wife would otherwise be exposed without remedy to personal injury." Mansfield, L. C. J.); 8 Wigmore, Evidence (3d ed.), § 2239; Comment, 4 Ark. L. Rev. & Bar Assn. J. 426, 427; Note, 38 Va. L. Rev. 359, 361. All that is necessary to fulfill this purpose is to provide the injured spouse with the means for redress. If she chooses not to utilize that means, there is no greater justification for compelling her testimony in such a case than there is in the normal situation. Although there is concededly authority to the contrary, in my view it is not well reasoned. Since the Court does not disagree, it is unnecessary at this time to discuss the matter in detail.

cludes that the wife "should be assumed" to be under the sway of the husband to such an extent that she cannot be entrusted with that choice. Consequently, the trial court—and the prosecutor—must be given the power to protect her against herself by forcing her to testify.

The fatal defect in this conclusion lies in the Court's evaluation of the mental state of the wife, an evaluation which finds no support in the record and which cannot properly be justified by any legislative enactment.

The Court does not and could not rely upon the record to prove that petitioner's wife was somehow mesmerized by him when she was on the witness stand. The evidence, in point of fact, strongly suggests that the wife played a managerial role in the sordid enterprise which formed the basis for the prosecution.[2] Apparently this was the jury's view, since the jurors asked the judge whether it would "make any difference or—if the woman had anything to do with the instigation or planning . . . ." The judge, of course, instructed them that this would be immaterial, but the jury nevertheless unanimously recommended leniency. Thus this case is a strange vehicle for the Court to use in announcing its "lack of independent will" theory. Presumably it is to be regarded as the exception which proves the rule.

The sole ground assigned by the Court for its decision is that it is a necessary application of the "legislative judgment underlying the [Mann] Act," which "reflects the supposition that the women with whom [Congress] sought to deal often had no independent will of their own, and embodies, in effect, the view that they must be pro-

---

[2] The most important testimony regarding the petitioner's purpose in providing for his wife's transportation was given by a hotel bellboy, who related various conversations which he had with petitioner. The clerk also testified as to his conversations with the wife, and there is little if anything to distinguish the evidence relating to the wife from that relating to the husband.

tected against themselves." In support of this hypothesis, the Court cites legislative history and the fact that, under 18 U. S. C. § 2422, a companion provision to § 2421, the consent of the woman does not relieve the defendant of criminal responsibility.[3] This equation of the legislative judgment involved in fashioning a criminal statute with the judgment involved in the Court's restriction of the husband-wife privilege is, I submit, entirely too facile, for it overlooks the critically different nature of these problems. In assessing the pertinence of the woman's consent to the culprit's criminal responsibility, Congress chose between the interest of society in eradicating the importation and interstate transportation of prostitutes and the interest of women to be protected from clever and unscrupulous profiteers, on the one hand, and the voluntary engagement of women in prostitution on the other. In view of the manifest imbalance of these competing considerations and the difficulty of definition and proof of the type of consent which might conceivably be relevant, it is hardly surprising that Congress passed the Mann Act and made consent entirely immaterial under § 2422. The testimonial privilege, however, presents questions of quite a different order, since there is a significant interest traditionally regarded as supporting the privilege, as we recognized in *Hawkins*—the preservation of the conjugal relationship. And where the wife refuses to testify, there is strong evidence that there is still a marital relationship to be protected.

---

[3] Section 2421, generally speaking, makes it a crime (a) to transport in interstate or foreign commerce any woman for the purpose of prostitution or other immoral purpose, or with the intent of inducing her to engage in prostitution or other immoral practice, and (b) to secure interstate or foreign transportation for any woman for the above purposes or with the above intent. Section 2422, generally speaking, makes it a crime to induce a woman to travel on common carriers in interstate or foreign commerce for the above purposes or with the above intent.

Not only does prior congressional action provide no support for the Court's decision, but without such support that decision represents an incursion into what is essentially a legislative area. It is true, of course, that federal courts have the authority to interpret the common-law principles of evidence "in the light of reason and experience." Fed. Rules Crim. Proc., 26. This authority, however, must be exercised with a discriminating awareness of the distinction between matters which fall within the special competence of the judiciary and those which are primarily the concern of the legislature. It is more properly Congress' business, not ours, to place comparative values upon the quest for facts in the judicial process as against the safeguarding of the marriage relationship, and to give—or deny—expression to what has been termed "a *natural repugnance* in every fair-minded person to compelling a wife or husband to be the means of the other's condemnation, and to compelling the culprit to the humiliation of being condemned by the words of his intimate life-partner." 8 Wigmore, Evidence, 227. That this decision is uniquely legislative and not judicial is demonstrated by the fact that, both in England and in this country, changes in the common-law privilege have been wrought primarily by legislatures.[4] And perhaps

---

[4] Every State has a statute governing the matter. For discussion of these statutes, see 3 Vernier, American Family Laws, 585–586; 2 Wigmore, Evidence, § 488, 8 *id.*, § 2245; 43 Marq. L. Rev. 131, 132; 33 Tulane L. Rev. 884; Note, 38 Va. L. Rev. 359. The many differences among these statutes is further evidence of the divergent views which may be held with respect to the relative importance of the factors involved. It is interesting to note in this connection that apparently only a small minority of States have passed statutes which make the wife competent to testify in a prosecution against her husband for pandering or white slavery when she is the female involved, and only some of these make her compellable as well as competent. See, *e. g.*, Me. Rev. Stat., 1954, c. 134, § 22; Ore. Comp. Laws Ann., 1940, § 23–921; Utah Code Ann., 1943, § 103–51–14; Va. Code, 1950,

it is worth noting that the essentials of the privilege have survived with remarkable sturdiness through the course of continued consideration by legislative bodies.[5]

Of particular interest is the past action and attitude of Congress with respect to the privilege. As the Court

---

§ 18–97; W. Va. Code Ann., 1955, §§ 6062, 6063. See also Note, 38 Va. L. Rev. 359, 366. Nor does the comprehensive British legislation give comfort to the Court. For a description of these statutes, see Evidence of Spouses in Criminal Cases, 99 Sol. J. 551. See also Nokes, Evidence, A Century Of Family Law (Graveson and Crane ed.), 146–149; Scots L. T. (1956), 145. Compare *Leach* v. *Rex*, [1912] A. C. 305, with *Rex* v. *Lapworth*, [1931] 1 K. B. 117. The experience of the Alabama Supreme Court is instructive. That court, in an "exception of necessity" case, held that the wife was not only competent to testify, but also compellable. *Johnson* v. *State*, 94 Ala. 53, 10 So. 427. The Alabama Legislature, however, abolished this decision by statute. Ala. Code, 1940, Tit. 15, § 311.

[5] See the sources cited in note 4, *supra*. To be sure, the privilege has been strongly attacked by commentators, most of whom rely upon Wigmore's treatise. Wigmore's lengthy criticism of the privilege is best summarized in his own words:

"This privilege has no longer any good reason for retention. In an age which has so far rationalized, depolarized, and de-chivalrized the marital relation and the spirit of Femininity as to be willing to enact complete legal and political equality and independence of man and woman, this marital privilege is the merest anachronism, in legal theory, and an indefensible obstruction to truth, in practice." 8 Wigmore, Evidence, 232.

It is arguable that this is as much an *ipse dixit* as the statements in favor of the rule which Wigmore criticizes upon that very ground. *Id.*, at 226–228. In any event, it is evident that his conclusion involves value judgments which the legislature is far better adapted to accept or reject than the judiciary.

For a view contrasting with Wigmore's, see *Bassett* v. *United States*, 137 U. S. 496, 505–506, where this Court narrowly construed a legislative provision regarding the privilege:

"We do not doubt the power of the legislature to change this ancient and well-supported rule; but an intention to make such a change should not lightly be imputed. It cannot be assumed that it is indifferent to sacred things, or that it means to lower the holy relations

pointed out in *Hawkins,* in 1887 Congress passed a statute which permitted either spouse to testify in prosecutions of the other for the crimes of bigamy, polygamy, or unlawful cohabitation, *but stipulated that neither should be compelled to testify.* 24 Stat. 635. Apparently Congress believed that this provision gave sufficient protection to the spouse-witness, and that the interest of the State in securing convictions was outweighed by the considerations supporting the right of the spouse-witness not to testify against her will. Even more in point is the 1917 legislation by which Congress made spouses competent to testify against each other in prosecutions for the importation of aliens for immoral purposes. 39 Stat. 878–879, re-enacted as 66 Stat. 230, 8 U. S. C. § 1328. Thus Congress has acted with respect to the scope of the privilege in prosecutions under a statute kindred to § 2421, but has remained silent so far as § 2421 itself is concerned. The negative implication does not require elaboration.[6]

---

of husband and wife to the material plane of simple contract. So, before any departure from the rule affirmed through the ages of the common law . . . can be adjudged, the language declaring the legislative will should be so clear as to prevent doubt as to its intent and limit."

[6] The nature of relevant action by Congress and by the state legislatures, see note 4, *supra,* distinguishes this case from *Funk* v. *United States,* 290 U. S. 371, which held that one spouse was competent to testify on behalf of the other in a criminal trial. As the Court there pointed out, the disqualification was based upon interest, and "[t]he rules of the common law which disqualified as witnesses persons having an interest, long since, in the main, have been abolished both in England and in this country . . . ." *Id.,* at 380. The contrast between this case and *Funk,* where the Court was able to rely upon "the general current of legislation and of judicial opinion," *id.,* at 381, is striking. In this connection, perhaps it should be emphasized that the federal decisions cited in note 2 of the Court's opinion stand, as the Court indicates, only for the proposition that a Mann Act prosecution falls within the common-law exception so that the wife may testify, and not for the rule that a wife in such a case may be

Moreover, it should be noted that even under § 1328 the testimony of the spouse is made only "admissible and competent," not compellable.[7]

In my judgment, the Court in this case strays from the course of appropriate judicial reserve marked by *Hawkins*. I am unwilling to join in a decision based upon an assumption of fact which is without support in the record and which involves a delicate, and essentially legislative, determination. I therefore dissent.

---

*compelled* to testify. But see *Shores* v. *United States*, 174 F. 2d 838, 841, where the Court of Appeals for the Eighth Circuit stated in dicta that the wife may be *compelled* to testify in *any* exception case—a view much broader than that here adopted by this Court.

[7] This seems to be the plain meaning of the statutory language, though similar language in state statutes has received both broad and narrow constructions. Compare *McCormick* v. *State*, 135 Tenn. 218, 186 S. W. 95, with *Richardson* v. *State*, 103 Md. 112, 117, 63 A. 317, 319–320. For the view of an English court, see *Leach* v. *Rex*, [1912] A. C. 305, 311 (not compellable) ("The principle that a wife is not to be compelled to give evidence against her husband is deep seated in the common law of this country, and I think if it is to be overturned it must be overturned by a clear, definite, and positive enactment, not by an ambiguous one . . . ." Lord Atkinson). See also 8 Wigmore, Evidence, § 2245 (*a*); Note, 38 Va. L. Rev. 359, 362–363.