**UNITED STATES of America,
Plaintiff,**

**v.**

**Herman Edward NELMS, Defendant.**

**Crim. A. No. 6081,**

**Civ. A. No. 1092.**

United States District Court
W. D. Virginia
at Roanoke.

Sept. 23, 1960.

---

678

Herman Edward Nelms, pro se.

H. Clyde Pearson, Asst. U. S. Atty., Roanoke, Va., for U. S.

TED DALTON, Chief Judge.

The defendant on July 1, 1960, moved this Court to vacate or correct an illegal sentence under Federal Rules of Criminal Procedure 35, 18 U.S.C.A., and 28 U.S.C. § 2255, at which time the Court ordered that the defendant be allowed to prosecute said motion in *forma pauperis*. With the filing of responsive briefs by both the movant and the United States Attorney, this motion is now before the Court for decision.

Upon the record as submitted, including an official transcript of the proceedings, the facts appear as follows:

The movant, Herman Edward Nelms, was brought to trial on May 8, 1960, and charged upon an indictment in two counts that on or about September 17, 1958, Herman Edward Nelms transported from Bluefield, West Virginia, to Roanoke, Virginia, in the Western District of Virginia, Lasula Roberts Nelms, a female, for the purpose of prostitution, etc., and that on or about October 11, 1958, Herman Edward Nelms transported from Roanoke, Virginia, to Bluefield, West Virginia, Lasula Roberts Nelms, for the purpose of prostitution, etc., in violation of 18 U.S.C.A. § 2421.

The defendant, Nelms, was represented by court-appointed counsel, Chas. D. Fox, III, and W. L. Hazlegrove, of the Roanoke Bar, discreet and competent attorneys, and upon their counsel and advice pleaded not guilty to the two counts of the indictment.

The Government's principal witness was the wife of the defendant, Lasula Roberts Nelms, who the defendant was charged with transporting in interstate commerce in violation of 18 U.S.C.A. § 2421. Her testimony was that she was sixteen (16) years of age at the time she met Herman Edward Nelms in 1958; that she saw him twice before they left for Bluefield, West Virginia, to get married. The record discloses that Nelms was approximately forty (40) years old with two children by a previous marriage. They were married in Bluefield, West Virginia, on September

4, 1958. The record is not clear how long but it shows that the two lived together in the home of a friend of Nelms (Helen) and in a hotel in Bluefield, West Virginia, for some time before they were married. While the couple were living in this hotel in Bluefield, West Virginia, Nelms presented the proposition to the victim that she prostitute herself. She testified that she did not want to, but that she did engage in this activity. She testified that she and Nelms moved from several hotels in Bluefield, West Virginia, and that Nelms procured dates for her, through porters and bellhops in each of these hotels. She stated she turned the money from the dates over to Nelms.

The Government introduced four witnesses whose testimony corroborated the testimony of the victim, Mrs. Nelms: John J. Rutland, Special Agent, FBI; H. D. Trent, Manager, Commercial Hotel, Bluefield, West Virginia; Harold Hendricks, bellboy, Commercial Hotel, Bluefield, West Virginia; and Todd Reed, Assistant Manager, Matz Hotel, Bluefield, West Virginia. Registration cards of the two hotels were entered showing that a Mr. and Mrs. R. L. Collins were registered in the Commercial Hotel from August 28, 1958, to September 10, 1958, and Mr. and Mrs. H. E. Nelms were registered at the Matz Hotel from September 14, 1958, to September 17, 1958.

Harold Hendricks, bellboy in the Commercial Hotel, testified that he recognized a picture of the victim, Mrs. Nelms, shown him by Special Agent Rutland, as a woman who had been at the hotel and who had approached him about filling prostitution dates. He also admitted that he might have identified pictures of Mr. and Mrs. Nelms to Mr. Rutland as the people who registered as Mr. and Mrs. Collins.

Todd Reed, Assistant Manager of the Matz Hotel, testified that the couple left that hotel at his request on September 17, 1958, because they had complaints from the housekeeping department that "the woman in 523 was running all over the house".

Mrs. Nelms further testified that she and Nelms came to Roanoke, Virginia, from Bluefield, West Virginia, by bus. Mrs. Nelms testified that "the same thing" happened while they were in Roanoke. She stated that they stayed in more than one hotel while at Roanoke, and that Herman would talk to the porters and they would make the dates and come to her room after her, and that she gave the money earned in Roanoke to Herman Nelms.

Mrs. Nelms recalled staying at the Ponce de Leon Hotel in Roanoke and filling dates at that hotel, as well as other hotels at the same time.

The Government introduced evidence to corroborate this testimony of Mrs. Nelms. E. B. Gray, night clerk, Earl Hotel, Roanoke, Virginia, brought with him a registration card showing that Mr. and Mrs. Herman E. Nelms had registered at the Earl on September 17, 1958, and departed on September 19, 1958. Mr. Gray identified the defendant as the same Mr. Nelms that was at the hotel.

Mr. B. W. Ross, Manager, Ames Hotel, Roanoke, Virginia, brought a registration card showing Mr. and Mrs. H. E. Nelms had stayed in that hotel on September 18th and 19th, 1958. Mr. J. D. Tucker, a bellboy at the Ames Hotel in September, 1958, testified that Mr. Nelms approached him about making money, asked him "Can we make any money?" or "Can we make any dates?".

Garland W. Miller, Manager, Ponce de Leon Hotel, Roanoke, Virginia, brought a registration card showing Mr. and Mrs. H. E. Nelms checked in on October 2, 1958, and out on October 5, 1958.

Thomas William Draper, former bell captain, Patrick Henry Hotel, testified that Mr. and Mrs. Nelms came to the hotel and that Mr. Nelms said "that where they were it wasn't so good and they were trying to get a better spot." He further stated that arrangements were made and Mrs. Nelms "came back

and was in the hotel." Mr. Draper identified the defendant as the man who was at the hotel.

The Government's evidence also showed that the defendant, Nelms, again transported the victim, Mrs. Nelms, interstate from Roanoke, Virginia, to Bluefield, West Virginia.

Mr. Donald Cormack, clerk, Drake Hotel, Bluefield, West Virginia, brought with him a registration card showing that a Mr. and Mrs. R. L. Collins checked in October 11, 1958, and out on October 13, 1958, and he testified that the defendant, Nelms, filled out this card.

Mr. Robert Gammons, bellhop, Drake Hotel, in October, 1958, identified the defendant as the Mr. Collins registered in October, 1958. He testified that the defendant asked about work for his wife.

Nelms was convicted by the jury on both counts of the indictment, and was sentenced by the Court on May 12, 1958, to five years on Count One and five years on Count Two, to run consecutively. 18 U.S.C.A. § 2421 provides a maximum imprisonment of not more than five years for a violation of the Act.

Nelms attacks in his motion this sentence of two five-year terms alleging that the evidence does not show two distinct trips making two separate offenses. He alleges that five years is the maximum punishment and all over that is an illegal sentence.

The other main issue presented by Nelms' motion is the question of the competency of the movant's spouse, the victim of the offense, as a witness.

However, in this motion and subsequent "supplementary" motions, the movant has raised additional issues which the Court feels merit consideration prior to a discussion of the more basic issues.

■ First, in a "supplementary" motion filed August 12, 1960, the movant alleged that the attorneys for the United States failed to file responsive pleadings and brief within the time set by the Court, and moved that the Court should determine the issues raised on statements alleged in his pleadings as they were unopposed by the United States. Nelms, subsequently, on August 22, 1960, filed an "Addendum to Supplementary Motion", stating that even though the attorneys for the Government may have filed their responsive briefs within the time limit, the movant was not served with a copy of the brief and that therefore, if the Government were unable to prove service to the movant, the Court should refuse to accept the brief as part of the record. The record clearly shows that the responsive brief of the United States, referred to by the movant, was filed with the Judge himself on July 23, 1960, and that a copy of the same was certified to Herman Edward Nelms on July 22, 1960, at his address. The Court granted the movant time to file a responsive brief as he requested, and the Court finds that the defendant has not been harmed in any way by the filing of this Government brief, and dismisses this contention of the defendant.

Within the movant's argument as to the competence of his wife as a witness, the movant makes other allegations which must be looked into. He alleges that aside from being incompetent, Mrs. Nelms perjured herself in testifying as she did. After reading the complete transcript of the proceeding, the Court was impressed by the straight-forward, non-evasive answers given by Mrs. Nelms. Her testimony, further, was corroborated, quite substantially, by documentary evidence and independent testimony. The Exhibits entered of registration cards at hotels in Bluefield, West Virginia, and Roanoke, Virginia, and by the testimony of employees of these hotels in Bluefield, West Virginia, and Roanoke, Virginia, demonstrate amply the truthfulness of her testimony, and the Court is of the opinion that the transcript of the trial does not support this contention of the movant.

■ Next, the movant requested that the Court treat this motion as a judicial hearing and that the presence of the movant with counsel be required. The matters raised in the motions may

all be disposed of by the Court from the record and transcript. The issues raised are all matters of law. The record of this cause and the transcript of the proceeding is complete and sufficient to decide the issues without the presence of the defendant. As is seen from the case of Gravely v. United States, 4 Cir., 1958, 251 F.2d 360, certiorari denied, 356 U.S. 961, 78 S.Ct. 999, 2 L.Ed. 1068, the production of the prisoner should be ordered only where the court is of the opinion that his presence would aid in arriving at the truth of the matter involved.

Finally, the defendant questions the adequacy of his legal counsel:

"Had movant's court-appointed counsel pressed for the witnesses he had been directed to obtain and secure, Mrs. Nelms would have been impeached at the time." Page 5, Motion to Vacate.

█ The Court finds that the defense presented by counsel for the defendant was in the best interests of the defendant; that in their questioning of defense witnesses, and in their cross-examining of Government witnesses the rights of the defendant were always protected. The record shows that the defendant, Nelms, was afforded a fair, impartial and just trial.

### Competence of Spouse

█ Movant is correct in his general propositions of law that a husband or wife cannot be compelled to testify against the spouse unless by consent of the spouse. Wigmore on Evidence, 2241 (3d Ed.). This case, however, presents a problem different from that for which this proposition stands. Here the wife is the victim of the offense for which the defendant, husband, was tried and convicted. The law on this point is as well settled as the law cited above. See 58 Am.Jur., Witnesses, §§ 191–196; Annotation, 11 A.L.R.2d 646, 656.

█ The husband's interstate transportation of his wife for immoral purposes is so much a crime against her person as to render her a competent witness against him, and even if she did not wish to testify, it would not make any difference. Denning v. United States, 5 Cir., 1918, 247 F. 463; Wilhoit v. Hiatt, D.C.M.D.Pa.1945, 60 F.Supp. 664.

The recent case of Wyatt v. United States, 1960, 362 U.S. 525, 80 S.Ct. 901, 904, 4 L.Ed.2d 931 decides this issue beyond any doubt. Wyatt was prosecuted under the same statute, 18 U.S.C. § 2421, and his wife was the victim of the violation. She was *compelled* to testify against her husband. The Supreme Court sustained a conviction and held the wife to be a competent witness even though compelled to testify over her and her husband's objection.

"Applying the legislative judgment underlying the Act, we are led to hold it not an allowable choice for a prostituted witness-wife 'voluntarily' to decide to protect her husband by declining to testify against him. For if a defendant can induce a woman against her 'will,' to enter a life of prostitution for his benefit —and the act rests upon the view that he can—by the same token it should be considered that he can, at least as easily, persuade one who has already fallen victim to his influence that she must also protect him. To make matters turn upon ad hoc, inquiries into the actual state of mind of particular woman, thereby encumbering Mann Act trials with a collateral issue of the greatest sublety, is hardly an acceptable solution."

See also Shores v. United States, 8 Cir., 1949, 174 F.2d 838, 11 A.L.R.2d 635 where it was held that the husband's transportation of his wife in interstate commerce for the purpose of having her engage in prostitution is a personal wrong against her within the common law exception to the incompetency of a wife's testimony against her husband and makes her testimony admissible in a prosecution of the husband under the Mann Act, notwithstanding her statement that she did not wish to testify against him.

The Court feels it necessary to note that Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125, relied on by movant, has no application here because in that case the wife was not the victim of the violation and the problem is correctly governed by the spousal privilege.

This Court, agreeing with the reasoning and result of the Wyatt and Shores decisions, as well as the other decisions on this point, therefore, holds that the victim of the violation, Lasula Roberts Nelms, was a competent witness in the trial of her husband, Herman Edward Nelms, and the movant, Nelms, has no cause upon which to complain.

### Separate Offenses

■ The other issue raised by movant is more complex and cannot be resolved so easily. Movant alleges that the facts disclose one continuous round trip and that the stops in Roanoke and Bluefield were mere incidental stops on this trip. He asserts that it cannot be but one violation of the Act on a single trip.

"In point of fact the same evidence was relied upon to prove both counts of the one charge against movant, proof of each count rested on divergent inference and projection from exactly the same core of facts." Page 10, Brief of Movant.

The Court notes a distinct difference between the transporting of two women on the same journey and one woman on two journeys. Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, was a case involving two women on one journey, and the court properly concluded one violation. Reed v. United States, 5 Cir., 1944, 142 F.2d 435, on the other hand, was a case where the same female was transported in interstate commerce on three separate occasions, and the court held each trip was a separate offense and punishable separately. Other cases cited by both sides are distinguishable and do not seem to

the court to be compelling authority for consideration in this case. The conclusion reached by this Court is that the evidence as shown from the record and transcript support the finding of the jury that Herman Edward Nelms was guilty of two separate offenses.

The alleged offenses were almost a month apart. Evidence shows that Mr. and Mrs. Nelms were in Bluefield, West Virginia, on September 17, 1958. Evidence also showed that Mr. and Mrs. Nelms registered in Roanoke on September 17, 1958. This clearly supports the testimony of Mrs. Nelms that they came to Roanoke. They obviously journeyed from Bluefield, West Virginia, to Roanoke, Virginia, on September 17, 1958.

Mr. Nelms and his wife were positively identified as the couple registering in Bluefield, West Virginia, on October 11, 1958. They had checked out of the Ponce de Leon Hotel, Roanoke, Virginia, on October 5, 1958. They had remained in Roanoke from September 17, 1958, to October 5, 1958.

The same evidence was not relied upon to prove both counts. The evidence was of the same type, but distinctly different evidence. Part of the evidence proved the trip from Bluefield, West Virginia, to Roanoke, Virginia. Other evidence proved the trip from Roanoke, Virginia, to Bluefield, West Virginia.

The Court is of the opinion that the movant, Nelms, was properly convicted of two separate offenses of transporting a female in interstate commerce in violation of 18 U.S.C.A. § 2421.

The Court having considered all the objections raised by the movant, and having carefully reviewed the record and transcript of proceedings is of the opinion that no rights of the defendant have been violated or denied and that he was given a fair and impartial trial. Therefore, the Court denies and dismisses the motion of the movant, Nelms, to vacate or correct an illegal sentence.