Clarence Everett **WILKERSON,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17837.

United States Court of Appeals
Eighth Circuit.

April 2, 1965.

Robert Travis Johnson, St. Louis, Mo., made argument for appellant and filed typewritten brief.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VOGEL and MEHAFFY, Circuit Judges, and REGISTER, District Judge.

VOGEL, Circuit Judge.

Clarence Everett Wilkerson (referred to as the defendant herein), having been convicted by a jury of a violation of 18 U.S.C.A. § 2421, commonly known as the "Mann Act", appeals to this court, asking that his conviction be reversed and the case remanded. The charging portion of the indictment returned by the grand jury alleged:

"That on or about the 17th day of March, 1964, CLARENCE EVERETT WILKERSON did knowingly transport in interstate commerce, by means of an automobile, certain women, to-wit, Beverly Mae Wilson, Mary Jean Stone, and Earnestine Brady, from the City of Little Rock, in the State of Arkansas, to the City of St. Louis, in the State of Missouri, within the Eastern Division of the Eastern District of Missouri, for the purpose of prostitution and debauchery.

"In violation of Section 2421, Title 18, United States Code."

To pass upon the contentions of the defendant, we find it necessary to summarize the testimony of the various witnesses, which we do as follows:

The first witness for the government was Mary Jean Stone. She testified that she had been a prostitute for eight years. On March 16, 1964, in Theo's Cafe in North Little Rock, Arkansas, she saw the defendant, his wife, Beverly, and Earnestine Brady. The defendant stated that he and Beverly were going to St. Louis and asked Earnestine Brady and Mary Jean Stone if they wanted to go. Beverly said she did not want to go. He held out the inducement of easy money from prostitution to be earned in St. Louis so the girls decided to come with him. In order to obtain expense money for the trip from Little Rock to St. Louis, Mary Jean Stone engaged in two acts of prostitution from which she earned $25, of which $10 was given to the defendant. The defendant took her car keys and started driving to St. Louis. The car they traveled in belonged to Mary Jean Stone but the defendant drove. The defendant made Beverly come with him and Earnestine and Mary Jean came along because he told them that they

could make easy money in St. Louis, Missouri. When they arrived in St. Louis, he told Beverly Wilkerson to get money from a bellboy to rent a room. When Beverly refused, the defendant started hitting her over the head. In order to get him to stop, Mary Jean gave him some money. The defendant told her he was "pimping" for her and he obtained a prostitution customer for her for $25 later on the first day of their arrival in St. Louis. She gave $5 of this amount to the defendant. She then engaged in three or four further acts of prostitution, earning around $80. On the next day, March 18th, she engaged in four further acts of prostitution, earning $125. The defendant forcibly took $25 from this witness on the 19th of March.

The second witness to testify was Earnestine Brady, a sister of Beverly Wilkerson, wife of defendant. She said that she was born on October 8, 1937, and attained the eleventh grade in school. She initially engaged in prostitution in 1958 and continued until sometime in 1964. On March 16, 1964, at Theo's Cafe in North Little Rock, Arkansas, the defendant told about the easy money to be earned from prostitution in St. Louis, Missouri. The defendant drove Mary Jean Stone's car from Little Rock, Arkansas, to St. Louis, Missouri. After arrival in St. Louis, Missouri, Earnestine Brady engaged in prostitution.

Beverly Mae Wilkerson, nee Wilson, was the third witness called by the government. First, out of the presence of the jury she stated that the defendant was her husband and that she voluntarily desired to testify in this case. The trial judge, after assuring himself that her desire to testify was entirely voluntary, permitted her to do so but ruled that her testimony "should be limited to the matters between her and the defendant in this case". Thereafter, over objection, Mrs. Wilkerson gave her testimony substantially as follows: She was born on May 31, 1939, and has a twelfth grade education. She has been a prostitute for ten years. She and the defendant were married on March 21, 1963. On March

16, 1964, the defendant had said he needed money and wanted her to go to St. Louis from Little Rock, Arkansas, to work as a prostitute and to give him the money. On that date, March 16, 1964, before leaving Little Rock, Arkansas, she engaged in two acts of prostitution from which she earned $15 and gave this money to the defendant. They got to St. Louis about 1:30 a. m. March 17, 1964. It was the defendant's idea to come to St. Louis. He drove the automobile. En route to St. Louis he wanted her to engage in an act of prostitution for the price of $5. When she refused, he then slapped her. Immediately upon arrival in St. Louis, the defendant wanted her to get money from a porter at a hotel. She refused and he knocked her out of the car. Her sister offered to borrow the money "to keep him from beating me up".

During March 17, 1964, their first day in St. Louis, she engaged in four acts of prostitution and gave the money to the defendant. On March 18, 1964, her earnings were $90 which she gave to the defendant. On March 19, 1964, she gave the defendant all the money that she earned and received a beating from him. "[He] took it away from me after he almost killed me; he just stole it." He beat her and kicked her so that she had to go to the hospital.

The defendant did not testify. The only testimony presented on his behalf was that given by his mother, Mrs. Clyde Wilkerson, who testified generally with reference to her son and the three women leaving her home in Little Rock and apparently going to St. Louis, Missouri. She testified that she attempted to talk her son out of going, and that when they left her home Miss Stone was driving the car.

Defendant's first contention on appeal is that the court erred in permitting the defendant's wife to testify against him. The general rule prohibits the testimony of one spouse against the other on the ground that such prohibition would promote peace in the family, not only for the benefit of the members thereof but for the benefit of the public as

well. Hawkins v. United States, 1958, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125. Defendant concedes that there is an exception to such rule in that where the wife is the victim of the criminal act with which the husband is charged, the privilege does not apply. Wyatt v. United States, 1960, 362 U.S. 525, 80 S.Ct. 901, 4 L.Ed.2d 931. Defendant's contention would make an exception to the exception, his position being that where there are multiple victims of a single criminal act (the simultaneous transportation in interstate commerce of a number of women in the same conveyance constitutes only one offense against 18 U.S.C.A. § 2421, Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905), one of whom is the wife of the defendant, she should not be permitted to testify against her husband over his objection where her testimony necessarily relates not only to the criminal act as it affects her, but also to its commission with respect to the other victims. Citing no authority for his contention, defendant argues that the exception noted in Wyatt, supra, should not be extended to the instant case; that in Wyatt the wife was the sole victim. Defendant contends that the reasons for the Wyatt exception to the exclusionary privilege are wholly absent in the case at bar; that there were two other witnesses who testified to the same material facts for the government here, thus making the wife's testimony unnecessary; that Beverly Wilkerson's testimony was not only voluntary but "given with obvious relish"; that it was highly prejudicial, weighed heavily against the husband on the issue of his intent in coming to St. Louis, and should not have been received. We see no reason for the creation of defendant's exception to the exception and as stated, he is unable to cite any holding in support thereof. The wife in the instant case was one of three victims of the defendant's unlawful act. We see no justification for excluding her testimony merely because the government could probably have established commission of the crime through the testimony of the other two victims and on the ground that the wife's testimony would be cumulative and overly prejudicial to the defendant. We find no merit in defendant's first contention.

■ Defendant's next contention is that the court erred in refusing to give his requested instruction No. 4, which limited the testimony of the defendant's wife to her own illegal transportation. Requested instruction No. 4 was as follows:

"The Court directs you that the testimony of Beverly Mae Wilson can only be considered by the jury as evidence of an illegal transportation of Beverly Mae Wilson and can in no way be considered by the jury as evidence of any illegal transportation of Earnestine Brady or Mary Jean Stone."

As already indicated, the trial court limited the government in its examination of Beverly Wilkerson to "matters between her and the defendant in this case". The government's direct examination was so limited. On cross-examination, the then counsel for the defendant did ask for and obtain minor inconsequential testimony regarding Mary Jean Stone. The government did not pursue such testimony on redirect. Under the circumstances, we find no error in the court's refusal to give requested instruction No. 4.

■ Defendant's third contention goes to the sufficiency of the evidence to justify his conviction. We have read the transcript of the testimony and have summarized it supra. We find it amply sufficient to justify conviction and that the trial court was eminently correct in overruling defendant's motion for judgment of acquittal at the conclusion of all the evidence.

■ Defendant's fourth charge of error is that the trial court failed to instruct on an essential element of the crime charged, viz.: That the defendant transported the prosecuting witnesses in interstate commerce. The contention is without substance. After instructing generally, the trial court read the indict-

ment to the jury, which specifically charges:

"That on or about the 17th day of March, 1964, CLARENCE EVERETT WILKERSON did knowingly transport in interstate commerce, by means of an automobile, etc."

He then stated:

"The section of the statute which I have just cited reads in part as follows:

"'Whoever knowingly transports in interstate commerce any women or girls for the purpose of prostitution or debauchery * * *.'

shall be punished as provided by law.

"It is the position of the government that on March 16, 1964, the defendant did induce Beverly Mae Wilson, Mary Jean Stone, and Earnestine Brady to leave Little Rock, Arkansas, and come with him to St. Louis, Missouri, where they arrived on March 17, 1964. The defendant transported the named women or girls for the purpose of having them engage in prostitution in St. Louis, Missouri, which they actually did.

"Of course, I need scarcely tell you that commerce between states is interstate commerce, and that the transportation of a woman or girl from one state to another constitutes the transportation of that woman or girl in interstate commerce."

We think the court's charge was sufficiently clear. Additionally, no objection was made or exception taken thereto and most certainly we can find no "plain error" which would invoke Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Defendant's fifth ground for reversal points to that of the court's charge to the jury as follows:

"* * * The defendant transported the named women or girls for the purpose of having them engage in prostitution in St. Louis, Missouri, which they actually did."

Taken out of context and standing by itself, it would appear as though the court was instructing the jury that the defendant did commit the crime with which he was charged. Considering the charge as a whole (the jury was instructed so to do), it is perfectly clear that the trial court intended no such admonition. He began the particular paragraph, with a part of which appellant finds fault, by stating, "It is the position of the government that * * *," etc. He also charged:

"Now in a criminal case, the matter of intent is, of course, an essential element which must exist in order for the accused to be criminally liable. Therefore, in order to find the defendant guilty, you must not only believe that he did the act complained of, and of which he stands charged, but you must also believe that the act was intentional and knowingly done by the defendant with the specific intent that one or more of the women named in the indictment would commit prostitution or debauchery."

Throughout the entire charge the trial court clearly and cogently impressed upon the jury the fact that the burden of proof was upon the government to establish the guilt of the defendant beyond a reasonable doubt, that all presumptions of law were in the defendant's favor, including the presumption of innocence, and that it was the duty of the jury to pass upon questions of fact. We believe that the challenged portion of the instruction was nothing more than a continuation of what the court was telling the jury as to the government's position and that the charge, taken as a whole, did not mislead the jury. See Sykes v. United States, 8 Cir., 1963, 312 F.2d 232, at 236, certiorari denied, 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698, where it was said:

"* * * the disputed instruction, not objected to at the time the case was submitted to the jury, was not erroneous when viewed in the light of the entire charge and [we

find] that it did not mislead the jury."

See, also, Levin v. United States, C.A. D.C., 1964, 338 F.2d 265. We hold there was no reversible error on this point and no prejudice to the defendant.

Defendant's sixth claim of error is that he was denied his right to a fair trial due to the erroneous admission of a mass of highly prejudicial evidence of unrelated criminal acts of violence. It is defendant's contention that,

" * * * The transcript is rife with instances of crimes of violence allegedly committed on the persons of one or more of the prosecuting witnesses and even goes so far as to present to the jury the specter of a man so vile that he would cause his wife to miscarry as a result of a beating administered by him. Appendix 'A' discloses that the jury was exposed to such evidence on twenty-five separate occasions [1] and one cannot escape the conclusion that the defendant was tried by the jury *not* as a Mann Act violator but as a wife-beater."

Defendant further contends:

" * * * Although it was admittedly competent for the government to show acts of prostitution upon completing the journey as proof of the requisite intent, a series of unrelated physical brutalities cannot qualify under the exception."

Counsel argues here that while most of the testimony to which he directs attention was not properly objected to in the trial court, that this court should "consider the sum total of the inflammatory testimony and its net effect upon the verdict and extend the scope of its appeal under the 'plain error' doctrine of Rule 52(b), F.R.C.P." We have carefully reviewed the transcript of testimony herein and have considered such transcript in the light of the charge that the court ad-

mitted evidence of unrelated criminal acts of violence. We do not find them unrelated. Taken in the aggregate and without listing the instances where the testimony was repetitious, they indicate generally as follows:

A. Beverly Wilson, on cross-examination, stated:

"Q. So, in other words, you wrote him a letter asking that you two live together, that he start working—

"A. (Interrupting) I asked him if he would help me support a baby but I didn't get to have a baby because he beat me up and I lost it."

The statement was elicited on cross-examination and no motion to strike was made.

B. That Wilkerson beat up his wife before leaving Little Rock to get her to come to St. Louis.

C. That Wilkerson slapped his wife en route to St. Louis because of her refusal to solicit a prostitution customer.

D. Immediately after arriving in St. Louis, Missouri, Wilkerson again struck his wife because of her refusal to borrow money from a hotel porter or a bellboy.

E. After arrival in St. Louis, he again beat her in the hotel room, breaking her nose, kicking her under the bed and taking her earnings from prostitution. She had to go to a hospital.

F. Mary Jean Stone testified that defendant came to her in front of the 600 Club, asked for money and upon her telling him she had none, grabbing her purse and taking the $25 she had in it and then kicking her.

With the possible exception of paragraph A, which came out on cross-examination, these acts tend to establish the defendant's intent and purpose in transporting the three victims from Little Rock, Arkansas, to St. Louis, Missouri. His acts indicate the inducement he offer-

---

1. Appendix "A" to defendant's Statement of Facts lists only 17 instances in which there is any reference to violence on the part of defendant. Out of the 17 in-

stances, many of which are repetitious, 8 alleged acts of violence were elicited by defendant's own counsel on cross-examination.

ed and the force he used to keep his victims under control and to carry out his ultimate purpose. This court, speaking through Judge Woodrough, said in Wiley v. United States, 8 Cir., 1958, 257 F.2d 900, 906:

"* * * It is well settled that the purpose for which the interstate transportation is induced may be inferred from the conduct of the parties within a reasonable time before and after the transportation. United States v. Reginelli, 3 Cir., 133 F. 2d 595, 598. 'Obviously an accused will not himself disclose his intent. Hence it is well settled that it may be discovered elsewhere, as from evidence of other similar activities of the accused * * *.' United States v. Pape, 2 Cir., 144 F.2d 778, 781. ' "Where the intent of the parties is a matter in issue, it has always been deemed allowable * * to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment." * * * "Relevant and competent evidence of guilt is not rendered inadmissible because it also tends to prove that the defendant committed another offense." ' Tedesco v. United States, 9 Cir., 118 F.2d 737, 740. Intent, motive or purpose necessary for the establishment of a crime may rest in inference and may be proved by circumstantial evidence. United States v. Reginelli, supra, 133 F.2d 595–598."

See, also, Neff v. United States, 8 Cir., 1939, 105 F.2d 688, 691.

We hold that the evidence of defendant's conduct immediately before, during and after the transportation from Little Rock to St. Louis was admissible as part and parcel of the entire transaction and as such indicative of his intent to transport the three women from Little Rock, Arkansas, to St. Louis, Missouri, in contravention of 18 U.S.C.A. § 2421. As far as the testimony with reference to the defendant having beaten his wife and thereby causing a miscarriage, it was not brought out by the government but on cross-examination of the defendant's wife by defendant's counsel and no attempt was made to have it stricken. No error chargeable to the court can be predicated thereon.

From an examination of the entire record we are well satisfied that the government introduced sufficient evidence to justify the jury in finding the defendant guilty beyond a reasonable doubt and that no prejudicial errors were committed.

Robert Travis Johnson, of St. Louis, Missouri, was appointed by this court to represent the defendant herein. He has done so with care, diligence and skill, thereby being of considerable aid to this court. We express to Mr. Johnson the court's appreciation.

Affirmed.