## GREAT AMERICAN INDEMNITY CO. v. CITY OF CORPUS CHRISTI.

### No. 11520.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 19, 1945.

Rehearing Denied Jan. 16, 1946.

John C. North, of Corpus Christi, and E. H. Crenshaw, Jr., of Kingsville, for appellant.

Hodge Thompson, of Corpus Christi, for appellee.

NORVELL, Justice.

This is a suit upon an insurance policy issued to the appellee, City of Corpus Christi, as the assured, by the appellant, Great American Indemnity Company. The insurance contract covered generally the City's operation of a municipal airport, known as the Cliff Maus Field.

After a trial without a jury, judgment was rendered against appellant and in favor of appellee for the sum of Five Thousand Dollars.

Two questions are presented upon the main appeal. The first is whether or not the accident which is the basis of this litigation was covered by the insurance policy. The other question relates to the right of the City to demand reimbursement from the insurance company under the policy by reason of its having paid off a claim of liability asserted against it and reduced to judgment. The appellant had denied liability under the policy, and the prior litigation, which resulted in the judgment against the City, was controlled by attorneys selected by the City and not by the insurance company.

Findings of fact and conclusions of law were filed by the trial court.

The policy here involved provided that Great American Indemnity Company "does hereby agree with the Assured herein named (the City of Corpus Christi) subject to the limitations and conditions

herein contained, as respects accidents occurring, while this policy is in force, upon or over the assured's premises described in statement 4 (Cliff Maus Field) or upon sidewalks, areas or other ways immediately adjacent to said premises, by reason of the use, maintenance, ownership or control of said premises, including making of ordinary repairs and ordinary alterations thereto, or by reason of assured's business operations described in statement 5 (operators of Airport) on said premises:

"1. Bodily Injuries. To pay, within the limits specified in Statement 3(a) ($50,000 to one person, $100,000 for one accident), the loss from the liability imposed by law upon the Assured for. damages, including consequential damages, on account of bodily injuries, including death resulting at any time therefrom, suffered or alleged to have been suffered by any person or persons not employed by the Assured, as a result of such accidents."

Under the heading of "Exclusions," the contract provided that, "This Policy does not cover: * * * (c) Accidents caused by reason of: * * * (4) the existence, maintenance or use of any watercraft or aircraft owned, hired or controlled by (but not excluding the temporary direction of aircraft not owned or hired by the Assured which it may be necessary for the Assured to exercise in properly directing the operation of aircraft over and above said premises) or in the custody of, the Assured or his agents, employes or pupils; * * *."

On January 30, 1938, John Greene, a minor, three years of age, was severely injured at Cliff Maus Field, of which O. G. Corbin was the then acting manager for the City of Corpus Christi. An airplane owned by Corbin was being pushed out of a hangar under the direction of Corbin and with the assistance of other persons then in and about said airport. This plane was pushed against said child so that the wheel thereof passed upon and rested for a while upon the child's body, causing severe bodily injuries.

The appellant contends that as the plane which injured the minor, John Greene, was owned by Corbin, the manager of the airport, the accident was not covered by its insurance policy. The trial court found that at the time of the accident the "airplane was being pushed out of the hangar by O. G. Corbin and J. G. McNeill for the purpose of permitting the said J. G. McNeill to fly said plane to test the sound

equipment," which was installed on said plane so that it could be used for advertising purposes.

The City requested the court to find that the injury to John Greene occurred while the airplane involved was "being moved under the direction of the airport manager to permit one Jeter to get another airplane out of the hangar for the said Jeter."

The trial court refused to make this finding, but did make an additional finding stated as a conclusion of law to the effect that "the evidence in this case is sufficient to show that the aircraft which injured John Greene, a minor, was under the temporary directions of the Airport Manager of the Corpus Christi Municipal Airport, and that .the directions exercised were necessary in properly directing the operation of aircraft over and about said premises."

Upon the basis of its findings, the trial court held that the accident to the minor, John Greene, was embraced within the terms and provisions of the policy and rendered judgment accordingly.

Upon the trial Corbin testified that his plane was being moved, at the time the Greene boy was injured, in order "to get another airplane for pilot Jeter, one of Tom Graham's ships." The witness W. G. Blake, Jr., who was present at the time the Greene boy was injured also testified that the plane was "being moved in order that Tom Graham's plane could be moved out of the hangar." The source of this witness' information is not clear. The appellant introduced in evidence prior statements made by Corbin to the effect that the plane was being moved so that McNeill might take the same into the air and test certain sound equipment installed in and upon the airplane. The trial court's finding as to the purpose for which the plane was being used is apparently supported by testimony which was admitted for impeachment purposes only. However, as we construe the exclusion clause relied upon by appellant, it is not dependant upon any particular mental intention or purpose entertained by the director of the airport at the time of the movement of the plane in question. The plane was .being moved under the direction of the airport manager. The plane was not owned or hired by the City of Corpus Christi. The direction of the movement of planes in and out of hangars or places of storage maintained by the municipality comes under the head of directing the

operation of aircraft about the premises and consequently comes within the "exception to the exception" above quoted. We sustain the trial court's action in so holding.

As to the second question presented upon this appeal, it appears that George W. Greene, father of the injured boy, filed two suits against the City of Corpus Christi. In one suit, Greene sought a recovery of $14,000 against the City for damages which he sustained as the father of the injured boy. The second suit was filed as next friend of John Greene, the injured minor, and sought a recovery of $90,000. The petitions in both of these cases stated a cause of action against the City. Appellant was notified of these suits and caused its attorneys to answer for the City. However, following instructions received from the insurance company, its attorneys notified the City in writing that "The Great American Indemnity Company takes the position that its policy does not cover this accident, and that it is not liable under the same for the payment of any judgment that Mr. Greene might recover against the city, it being the contention of the Great American Indemnity Company that the exception contained in Subdivision 4 of Paragraph 7, Section 2, in its policy to the city is applicable to the facts in this case."

The subdivision referred to in the letter is the exclusion clause set out in the forepart of this opinion.

The insurance company did, however, offer to defend the suit under a clause of the policy which bound the company "to defend in the name and on behalf of the assured, any claim or suit against the assured, even if groundless, to recover damages on account of bodily injuries and/or property damage covered hereby."

The City, as a result of the denial of liability on the part of the insurance company, employed its own attorneys and defended the suits with the result that one suit was dismissed, while in the other suit, brought by George W. Greene as the next friend of John Greene, a minor, judgment was rendered against the City for the principal sum of $5,000, which sum of money has been paid by the City in settlement of the judgment.

Appellant in its brief says that "Had the appellant Insurance Company denied liability under its policy and refused to defend the suit, it would clearly have breached its contract of insurance with appellee, and appellee would have been entirely justified in proceeding to defend the case for its own account and make the best settlement possible; and appellee could then have maintained this sort of a suit against the Insurance Company to reimburse itself for its expenditures."

"The two elements must concur in order to effectuate such a breach of contract of insurance; the insurer must not only deny liability under the terms of the policy, but it must also refuse or fail or neglect the defense of the suit imposed upon it by its policy obligations."

In our opinion, this position is not tenable. Under the policy, the duty to defend suits does not exist independently of the duty to pay the loss from the liability imposed by law upon the assured should such liability be established.

If in truth and in fact the "accident" be not covered by the policy, then the insurance company is under no obligation to pay damages resulting therefrom, nor is it obligated to defend a suit relating to or growing out of such "accident." When an insurance company denies liability for the payment of damages growing out of a claim asserted by means of legal proceedings, it can not thereafter insist that the contractual duty to defend becomes a right to defend and deprive the insured of his right to control the litigation and proceed with it as he thinks best in the light of his own interests.

The unequivocal denial of all liability to pay a loss under its insurance policy, in the absence of a special contract with the assured, disqualifies the insurance company from defending a suit against the assured for the recovery of damages which the insurance company says is not covered by its policy. The insurance company and the assured may enter into a special contract relating to the defense of a claim asserted against the assured by a third party, based upon the premise that the liability of the insurance company is doubtful or not admitted, but after an absolute and continued assertion of non-liability, the assured is not required to accept such a contract, American Fidelity & Casualty Co. v. Williams, Tex.Civ.App., 34 S.W.2d 396, writ refused, and may treat the denial of liability as a breach of the insurance contract and proceed to defend the claim by securing the services of attorneys of its own selection, as was done by the City in

this case. Automobile Underwriters v. Long, Tex.Com.App., 63 S.W.2d 356; United Services Automobile Ass'n v. Zeller, Tex.Civ.App., 135 S.W.2d 161; United States Fidelity & Guaranty Co. v. Pressler, Tex.Civ.App., 185 S.W. 326; Rieger v. London Guarantee & Accident Co. of London, England, 202 Mo.App. 184, 215 S.W. 920.

Appellant's points do not disclose a reversible error and are overruled.

By cross-points, the appellee contends that the trial erred in not allowing the City a recovery of interest upon the $5,000 paid by it in settlement of the judgment rendered in the case of John Greene, by next friend, against the City.

A copy of the insurance policy sued upon was made a part of the City's petition upon which this case was tried. In this policy the Company agreed "to pay * * * all interest accruing on the full amount of any judgment in such suit, until the Company shall have delivered its check, to the judgment creditor or to his attorney of record, in payment of its liability under said agreements."

The City pleaded that a judgment had been rendered against the City and upon the trial introduced said judgment in evidence. No contention was raised and probably could not be successfully maintained that this judgment was not admissible for all purposes under the pleadings. This judgment provided that the minor, John Greene, do have and recover of the City of Corpus Christi the "sum of $5,000.00, to be paid as follows: "$2,000.00 in cash shall be paid to George J. Greene, the Guardian of the Estate of John Greene, a minor child for which execution shall issue in favor of the Guardian; $250.00 in cash shall be paid to George J. Greene, the Guardian of the Estate of John Greene, a minor child, on the first day of November, A. D. 1938, and a like sum on the first day of each month thereafter until said sum of $3,000.00 is paid in full to said minor child."

The City both pleaded and proved that the City had paid off this judgment.

The trial court was apparently of the opinion that the City's petition was insufficient to support a recovery of interest. Although the prayer did not contain the specific word "interest," we are of the opinion that the petition as a whole clearly states a demand against the insurance company for the payment of a claim evidenced by a judgment, in accordance with the terms of the policy of insurance set forth as a part of the petition. Appellee made a request to amend its pleading with reference to the matter of interest, which was denied as coming too late. In our opinion, however, an amendment was not necessary for the allowance of interest, Rule 59, Texas Rules of Civil Procedure, and the proof plainly showed that the City was entitled to recover this item. We sustain appellee's cross-point relating to this matter.

The judgment of the trial court is reformed so as to allow the City a recovery of $6,774.87 (instead of $5,000) together with interest on said amount of $6,774.87, from December 29, 1944 (the date of the judgment below), until paid, at the rate of six per cent per annum. The judgment of the trial court as reformed is affirmed.

On Motion for Rehearing.

NORVELL, Justice.

In appellant's motion for rehearing it is stated that, "On the trial of this case below the Insurance Company contended that this plane, owned by Corbin, the City's agent, was being pushed out of the hangar in order that it might be flown into the air to test its sound equipment. On the trial the witness Corbin testified that he was moving this plane in the hangar so as to get a plane belonging to a Mr. Graham; but it was shown that Corbin had previously stated that his plane was being moved so that his partner might take the same into the air and test certain sound equipment."

It appears that the previous statement referred to by appellant was made by Corbin to one C. W. Craft, an investigator for appellant. Appellee calls our attention to the following conclusion of law made by the trial judge, viz:

"I now conclude, as a matter of law, that I erroneously admitted in evidence the statement made by O. G. Corbin to the investigator, C. W. Craft, and admitted in connection with the testimony of the said Craft, and such statement has not been considered by me in arriving at my verdict and judgment."

No attack is made here upon the conclusion of law above quoted.

We adhere to our holding expressed in the original opinion, that the movement of the Corbin plane, which resulted in injury to the Greene boy, came within the "excep-

tion to the exception" of the policy, regardless of whether such plane was being moved in order to get Tom Graham's plane out of the hangar, or was being moved for the purpose of testing the sound equipment installed thereon. The above statements from the motion and transcript are however set forth in order to make clear the actual status of the record, since our attention has been called to the fact that the trial judge did not consider the statement which Craft said Corbin made to him, but held that such statement was inadmissible in evidence.

If the point be material in any way, the uncontradicted evidence shows that at the time the Greene boy was injured, Corbin was moving his airplane in order that the Graham plane might be taken out of the hangar, although he may have also entertained the intention of later testing the operation of the sound equipment of his plane while said plane was in flight.

Appellant's motion for rehearing is overruled.