The **BABCOCK & WILCOX COMPANY,**
Appellee,

v.

**PARSONS CORPORATION,** Appellee,

v.

**INSURANCE COMPANY OF NORTH AMERICA,** Appellant.

No. 19949.

United States Court of Appeals,
Eighth Circuit.

Aug. 11, 1970.

Lyle E. Strom, Fitzgerald, Brown, Leahy, McGill & Strom, Omaha, Neb., for appellant; William J. Brennan, Jr., and C. L. Robinson, Omaha, Neb., on the brief.

William E. Naviaux, Omaha, Neb., for appellee, Parsons Corp.; Malcolm D. Young, Omaha, Neb., on the brief.

John T. Grant, Kelley, Grant, Costello & Dugan, Omaha, Neb., for appellee, The Babcock & Wilcox Co.

Before MATTHES, Chief Judge, HEANEY and BRIGHT, Circuit Judges.

MATTHES, Chief Judge.

This appeal comes to us from a judgment of the United States District Court for the District of Nebraska holding Insurance Company of North America (INA) liable to Parsons Corporation (Parsons) and The Babcock and Wilcox Corporation (Babcock) on two insurance policies issued by INA to Parsons. Jurisdiction in the district court was premised on the diverse citizenship of the parties. Because of the complex and rather unique issues raised on appeal, we detail the factual setting of the litigation.

Parsons and Babcock were corporations involved in the construction of a power plant near Stanton, North Dakota. As is customary in the trade, they had agreed to perform services for each other, although they were working under independent contracts. On May 21, 1964, pursuant to the agreement, Babcock furnished its large crane to Parsons for the purpose of moving a derrick used by Parsons on the project. The operation was undertaken with an employee of Babcock operating the crane under instructions of Parsons' employees. During the lifting of the derrick, the crane boom broke and the boom and derrick fell to the ground. Both the crane and derrick were extensively damaged.

Parsons immediately notified INA of the accident, and an investigation was conducted.

On March 26, 1965, Babcock filed a complaint against Parsons in the district court for damages to its crane.[1] The complaint was in three counts. The first two alleged that Parsons had either borrowed or rented the crane from Babcock and had returned it in a damaged condition. The third count alleged merely that the crane had been damaged due to Parsons' negligence.

On receipt of the complaint Parsons notified INA and tendered it the defense. Parsons had two policies issued by INA—a general liability policy and a machinery floater policy. The former provided for indemnification of Parsons should it be held liable to a third party for damages. It also contained the following defense clause:

"With respect to such insurance as is afforded by this policy, the company shall:

defend any suit against the insured alleging such injury, sickness, disease, or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . . .

The machinery floater policy was designed to protect property owned, rented, etc., by Parsons. The floater policy contained no defense clause.

INA declined to accept the defense of the lawsuit under the general liability policy on the basis of an exclusionary clause which exempted from coverage injury to property owned, occupied by or rented to Parsons, or property in the

care, custody, or control of Parsons. However, INA did offer to defend under the floater policy on the condition that Parsons sign a "non-waiver agreement." [2]

Parsons refused INA's conditional offer and defended through its own counsel. An answer was filed denying that Parsons had rented or loaned the crane and denying any negligence. In addition, Parsons filed a counterclaim alleging damage to the derrick because of Babcock's negligence and further damages for breach of contract. Parsons also filed a third-party complaint against INA, pursuant to Rule 14, Fed.R.Civ.P., against INA seeking two forms of relief: (1) that INA be held liable on its policies for any judgment rendered against Parsons in the primary action, and (2) that INA be held liable to Parsons for the reasonable expenses incurred in defending the primary action.

INA filed an answer and moved for a separate trial of the third-party action. With the consent of Parsons the motion for a separate trial was granted.

The claims between Babcock and Parsons were tried to a jury which returned verdicts for both parties. On motion of Babcock the verdicts were vacated and a new trial ordered. At the second trial the case was submitted on special interrogatories. In answering them, the jury found that the operator of the crane was acting as a servant of Parsons, that neither Babcock nor Parsons was negligent in operating the crane, that Babcock had sustained damages to its crane in the amount of $10,000, and that Parsons had sustained damages to its derrick in the amount of $8,000. The court entered an appropriate judgment on the basis of

1. The complaint alleged that Babcock was a corporation organized under the laws of New Jersey with its principal place of business in New York, and that Parsons was a corporation organized under the laws of Nebraska with its principal place of business in Nebraska. The complaint alleged $29,657.60 damages and prayed for that amount.

2. The offer to defend under only the floater clause was apparently gratuitous since

that policy contained no defense provision.

The "non-waiver agreement" provided that INA's defense of the suit would not constitute a waiver of its right to later challenge liability under the policy. Such an agreement is necessary in Nebraska because that jurisdiction has adopted the rule that an insurer is estopped from denying liability under the policy once it undertakes defense of the claim for the insured.

the verdicts returned, neither party recovering for damage to their respective units of equipment. This judgment terminated the litigation between Babcock and Parsons, and is final.

Thereafter, pursuant to leave, Parsons filed an amended complaint against INA in which it limited its claim to recovery of expenses incurred in defending the primary action. It alleged that INA was obligated to so defend under the liability and floater policies. Thereupon, Babcock, on February 27, 1968, sought leave to intervene under Rule 24(a) (2), Fed.R.Civ.P., urging that its interests would be inadequately represented by Parsons and that it might be bound by a judgment entered in the third-party litigation. As a part of the motion to intervene, Babcock filed a complaint against INA alleging that the crane was in the possession of Parsons at the time of the accident, that Parsons was entitled to recover for the damage to the crane under the floater policy, and that Babcock as owner of the crane was a third-party beneficiary of the floater policy and therefore entitled to recover over against INA for damage sustained to the crane. The motion to intervene was apparently not challenged by either INA or Parsons, and the district court granted it.

After trial before the court, judgments were rendered in favor of Babcock for $9,950, and Parsons for $12,559.77.[3] INA's motion for a new trial was denied on June 12, 1969, and this appeal followed.

As is apparent from the foregoing, the trial from which this appeal arose involved two independent claims. INA, the appellant, challenges the district court's decision on both claims—Parsons' right to recover expenses incurred in defending the primary suit, and Babcock's right to recover on the floater policy as a third-party beneficiary.

### THE DUTY TO DEFEND

In support of its conclusion that it was not obligated to defend, INA submits the following contentions: (1) it was obligated to undertake defense under the general liability policy only of those claims within the policy's coverage, and Babcock's complaint showed that its claims were excluded from coverage; (2) under Nebraska law it was disqualified from defending Parsons once it had denied liability and was unable to secure a "non-waiver agreement"; (3) it was excused from defending Parsons, because to undertake the defense would estop it from denying liability under the policy; (4) the potential conflict of interest between it and Parsons absolved it of its duty to defend; (5) even if it were initially required to defend, the duty extended only until Babcock answered Parsons' interrogatories, at which time it became manifest that the claim was outside the policy's coverage.

We look to Nebraska law to determine whether INA was obligated to accept defense of Babcock's claim against Parsons.

Initially, it may be observed that the insurer is required to undertake defense only of those claims asserted against the insured which fall within the coverage of the policy. Gottula v. Standard Reliance Insurance Co., 165 Neb. 1, 84 N.W.2d 179 (1957); Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N.W.2d 593 (1942). And, the allegations contained in the plaintiff's pleadings are the reference for deciding whether the claim is within the policy's coverage. Only recently the Nebraska Supreme Court has had occasion to rearticulate the appropriate standards:

" 'An insurer's duty to defend an action against the insured is measured in the first instance by the allegations of the pleadings in the action against the insured, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend irrespective of the insured's ultimate liability to the plaintiff.' " (Citing cases)

---

3. The district court's memorandum opinion is reported at 298 F.Supp. 898.

Farmers Elevator Mutual Insurance Co. v. American Mutual Liability Insurance Co., 185 Neb. 4, 173 N.W.2d 378, 386 (1969). See also National Union Fire Insurance Co. of Pittsburgh v. Bruecks, 179 Neb. 642, 139 N.W.2d 821 (1966).

To this point there is no disagreement between the parties. The dispute arises when these principles are applied to our facts. As we have noted, Babcock's complaint charged three separate counts. The first two sought recovery based on the theory that the crane had been loaned or rented to Parsons and had been returned damaged. The third count, however, sounded only in negligence, and alleged no facts premising recovery on Parsons' rental, possession, or control of the crane. Nor does it incorporate any such facts from counts one or two.

■■ INA submits that counts one and two must be considered in assessing the scope of count three, an argument which is contrary to the principle that, under the federal rules a claimant may plead inconsistent facts in support of alternative theories of recovery. Rule 8(e) (2), Fed.R.Civ.P. It is not unreasonable to read Babcock's complaint as premising liability on alternative grounds, the first requiring a showing of possession or control on behalf of Parsons, and the second based on Parsons' negligence, apart from any possession or control.

When fairly read, we do not believe the third count of Babcock's complaint necessarily rests on facts excluding it from coverage under the "possession-control" exclusion of the policy. INA asserts, however, that the third count is ambiguous and does not clearly state facts bringing it within the policy's coverage. It is contended that under Nebraska law an insurance company has no duty to defend in such a case.

■ The generality of the phrasing of the third count is consistent with,

and an outgrowth of, the spirit of the Federal Rules of Civil Procedure. Specificity is no longer a requirement for a complaint filed pursuant to the rules, and clearly the third count satisfied the requirements of Rule 8(a) (2).[4] It of course follows that "notice" pleading permitted under the federal rules makes difficult application of the principle that the insurer's duty to defend is to be determined by the plaintiff's complaint—a doctrine which was developed when pleadings were considerably more specific. This problem has not gone unnoticed by the courts and commentators. *E.g.*, Lee v. Aetna Casualty & Surety Co., 178 F.2d 750 (2d Cir. 1949); Milliken v. Fidelity & Casualty Co., 338 F.2d 35 (10th Cir. 1964); Gray v. Zurich Insurance Co., 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966); The Insurer's Duty To Defend Under A Liability Insurance Policy, 114 Pa.L.Rev. 734 (1966) (hereafter Pa.L.Rev.). However, our research indicates that the courts have generally placed the burden of uncertainty as to the policy's coverage on the insurer. Where the allegations of plaintiff's complaint, albeit ambiguous, state a claim which is potentially or arguably within the policy's coverage, the insurer must accept defense of the claim. Shaw v. Aetna Casualty & Surety Co., 407 F.2d 813 (7th Cir. 1969); Green v. Aetna Insurance Co., 349 F.2d 919 (5th Cir. 1965); American Indemnity Co. v. Sears, Roebuck & Co., 195 F.2d 353 (6th Cir. 1952); Lee v. Aetna Casualty & Surety Co., *supra*; Employers' Fire Insurance Co. v. Beals, 240 A.2d 397 (R.I. 1968). See also Annot. 50 A.L.R.2d 458, 504 (1956); 7A Appleman, Insurance Law and Practice §4683, pp. 439, 440 (1962).

■ INA's urgings to the contrary notwithstanding, the Nebraska cases have not promulgated a principle contrary to that established in *Lee* and the cited authority. As so frequently occurs in diversity cases, we are confronted

---

4. Rule 8(a) (2) requires that the pleading contain a "short and plain statement of claim showing that the pleader is entitled to relief . . . ."

with a narrow question not yet specifically considered by the state's highest court. In predicting what the Nebraska Supreme Court would hold, we attach significance to the great weight of authority supporting the principle above cited. Of further significance is the fact that the *Lee* case is cited with approval by the most recent analogous Nebraska decision. Farmers Elevator Mutual Insurance Co. v. American Mutual Liability Insurance Co., *supra*, 185 Neb. at 17, 173 N.W.2d at 386. And, the only other extra-jurisdictional case cited in the *Farmers Elevator* opinion, Danek v. Hommer, 28 N.J.Super. 68, 100 A.2d 198 (1953), also supports the principle that in instances where there is doubt as to the insurer's duty to defend, that doubt ought to be resolved in favor of the insured.[5]

 We conclude, therefore, that the trial court correctly held that count three of the complaint filed by Babcock stated a claim potentially within the coverage of the policy. And, once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit even though other claims in the complaint fall outside of the policy's coverage. Lee v. Aetna Casualty & Surety Co., *supra*; Danek v. Hommer, *supra*; Annot. 50 A.L.R.2d 458, 506–507 (1956). Accordingly, we hold that INA breached its contractual obligation by refusing to accept Parsons' tender of defense.

 INA also argues that, for any one of three reasons, it was disqualified

or excused from fulfilling that obligation under the circumstances of this case. It is first asserted that Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N.W.2d 623 (1951), disqualifies an insurer from defending a suit when the insurer has unequivocally denied liability under the policy and has failed to secure a "non-waiver agreement" from the insured. INA's reliance in *Hawkeye* is misplaced. *Hawkeye* involved, *inter alia*, the question whether the insured had breached the policy's "cooperation clause" by hiring its own counsel after the insurer, who had accepted defense, unequivocally denied liability and then instituted a declaratory judgment action to have itself freed from the burden of defending. The case does not stand for the proposition that the insurer can absolve itself from liability under the defense clause merely by tendering an offer of conditional defense and denying liability under the policy.[6]

 INA further contends that unconditional acceptance of the defense would have estopped it from contesting liability under the policy, and therefore it was relieved of any duty to defend. Whether under the circumstances INA would in fact have been estopped from denying liability once it had undertaken the defense, we need not decide. As the *Hawkeye* case reveals, an insured is under no obligation to sign a "non-waiver agreement." See also Youghiogheny & Ohio Coal Co. v. Employers' Liability Assurance Corp., 114 F.Supp. 472 (D. Minn. 1953) aff'd 214 F.2d 418 (8th Cir. 1954); 7A Appleman, Insurance Law

5. We further observe the fact that Nebraska has long held that any doubt or uncertainty in an insurance policy will be resolved in the insured's favor. See Modern Woodmen of America v. Wilson, 76 Neb. 344, 107 N.W. 568 (1906). Moreover, the Nebraska Supreme Court has frequently cited with approval Appleman, Insurance Law and Practice, a treatise which supports the general rule.

6. The language in *Hawkeye* so strongly relied upon by appellant is actually a quote from a Texas case. Great American Indemnity Co. v. City of Corpus Christi,

192 S.W.2d 917 (Tex.Civ.App.1945). In Steel Erection Co. v. Travelers Indemnity Co., 392 S.W.2d 713 (Tex.Civ. App.1965), the court cited *Great American* for the proposition that the insurer had disqualified itself from defending the insured by unequivocally denying liability under the policy. However, the court went on to find that the insurer in fact was required to defend in part the claim against the insured, and even though its conduct had disqualified it from assuming the defense, it was required to reimburse the insured for reasonable expenses incurred in defending the claim.

and Practice, §4686 at p. 474 (1962). The insured quite understandably might refuse to accept such a conditional offer out of a fear that the insurer would provide an inadequate defense. This valid concern on the part of the insured Parsons negates the claim that Parsons acted in bad faith in refusing to accept the conditional defense. And clearly the possibility of estoppel is no justification for insurer's refusal to comply with its contractual obligation. If such were the case, an insurer could avoid liability under the defense provision of its policies merely by refusing to undertake the defense. Neither logic nor the case law supports such a result.

■■■ Finally, appellant justifies its refusal to defend by noting the potential conflict of interest between it and Parsons because of the disputed coverage. Two cases are cited as support for the proposition—Farm Bureau Mutual Automobile Insurance Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949); Stout v. Grain Dealers Mutual Insurance Co., 201 F.Supp. 647 (M.D. N.C. 1962) aff'd 307 F.2d 521 (4th Cir. 1962). However, neither case is controlling. In both, the court held that the claim against the insured was *not* covered by the policy. The potential conflict of interest between insurer and insured was merely pointed to as a *further* reason for excusing the insurer from defending. The majority of courts which have considered the conflict of interest problem have refused to excuse the insurer from defending on that basis alone. See *e.g.*, Lee v. Aetna Casualty & Surety Co., *supra*; Maryland Casualty Co. v. Texas Co., 114 F.2d 952 (8th Cir. 1940); Employers' Fire Insurance Co. v. Beals, *supra*; Magoun v. Liberty Mutual Insurance Co., 346 Mass. 677, 195 N.E.2d 514 (1964). See also, 114 Pa.L.Rev. 734 (1966); Note, Liability Insurance Policy Defenses and the Duty to Defend, 68 Harv.L.Rev. 1436 (1955). We are satisfied that the potential conflict of interest between INA and Parsons did not absolve INA of its liability to Parsons for the cost of defending the primary

suit. Cf. National Union Fire Insurance Co. v. Bruecks, *supra*.

Finally, it is argued by INA that, its obligation if any to defend was extinguished when Babcock filed answers to Parsons' interrogatories. Consequently, it is submitted that INA should be liable only for litigation expenses incurred up to the time the answers were filed. INA relies on a principle recognized, chiefly in dictum, by several courts that an insurer's obligation to defend, which is initially premised on ambiguous allegations in plaintiff's complaint, survives only until the insurer can show that the plaintiff's claim actually rests on facts taking it outside the policy's coverage. Lee v. Aetna Casualty & Surety Co., *supra*; Sears, Roebuck & Co. v. Liberty Mutual Insurance Co., 199 F.Supp. 769 (N.D. Ill. 1961); Vappi & Co. v. Aetna Casualty & Surety Co., 348 Mass. 427, 204 N.E.2d 273 (Mass. 1965). See also Hagen Supply Corporation v. Iowa National Mutual Insurance Co., 331 F.2d 199 (8th Cir. 1964); Annot. 50 A.L.R.2d 458, 500 (1956). But see, McFadyen v. North River Insurance Co., 62 Ill.App. 2d 164, 209 N.E.2d 833 (1965); Employers' Fire Insurance Co. v. Beals, *supra*; Annot. 50 A.L.R.2d at 498.

■■■ Whether Nebraska would follow this rule need not be determined, for we believe that INA has failed to make a sufficient showing that Babcock's claim was "narrowed" by the answers to the interrogatories. Before an insurer may be permitted to step out of a suit in which it has accepted the defense, it must be clearly and unequivocally demonstrated that the plaintiff's claim against the insured no longer potentially falls within the policy's coverage. If there remains a possibility that the plaintiff may recover on a claim within the policy's coverage, the insurer must continue its defense even though it may ultimately be absolved of any liability. Here, INA chose to rest its refusal to defend solely on the basis of the allegations of the complaint. It never entered the litigation between Parsons and

Babcock, and thus never afforded itself the opportunity to establish that Babcock's claim was clearly not covered by the policy. As a belated effort to excuse itself from liability for failing to defend, it now asserts that the answers to interrogatories propounded by the insured established that Babcock's claim was outside the policy's coverage.

The experienced trial judge, an observer of the entire proceedings, noted that Parsons' control of the crane had not been established prior to the jury's verdict in the primary litigation and concluded that Babcock's claim had not been sufficiently narrowed prior to that time. The only evidence INA offers in opposition to this conclusion is several answers to interrogatories, which when taken out of context can be read to suggest that Babcock was basing its negligence claim on Parsons' control of the crane at the time of the accident. However, we do not believe that these answers, when placed in the context of the entire litigation would have precluded Babcock from recovering in negligence even though it could not establish that Parsons was in control or possession of the crane at the time of the accident.[7] Since there remained the possibility that Babcock could recover on a claim within the policy's coverage, INA had an obligation to continue its defense on behalf of Parsons. In short the interrogatory answers did not clearly and unequivocally narrow Babcock's claim to one excluded by the policy's coverage.

INA was not without remedies. If it were convinced that Babcock's allegations were premised on facts clearly excluding coverage, it could have accepted the defense and submitted its own interrogatories directed specifically to Babcock's theory of recovery. Alternatively, it could have sought a declaratory judgment on the question of its duty to defend. It chose to do neither, and, under the circumstances, must suffer the consequences.

Accordingly, we affirm in its entirety the judgment of the district court holding INA liable for the expenses incurred by Parsons in defending the lawsuit.

## BABCOCK AS THIRD-PARTY BENEFICIARY

We are met at the outset of this issue with the contention that the federal district court lacked subject matter jurisdiction of the claim Babcock as intervenor brought against INA. It is submitted, and we agree, that the prayer for damages "in the amount of $10,000, plus costs herein expended and a reasonable attorney fee," failed to satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a).[8] The question for decision is, then, whether Babcock's claim can be supported by some notion of ancillary jurisdiction. INA offers two reasons for its conclusion that Babcock's claim must stand on independent jurisdictional grounds or fail: (1) the motion to intervene should have been treated as a Rule 14 Fed.R.Civ.P. claim

7. When these answers are considered in the light of Babcock's alternative pleadings, we are even less persuaded that they constitute the type of evidence which is adequate to constitute a narrowing of the claim so as to come within the exclusionary clause. The answers were conclusory and entirely consistent with Babcock's theory of recovery under counts one and two. In short they were self-serving as to counts one and two, and not significantly harmful as to count three.

8. Although attorney fees are not generally includable in the jurisdictional amount, an exception is made when a statute au-

thorizes the granting of same. See generally 1 Moore's Federal Pratice, ¶.99 [2] (2d ed. 1964). We have explored Nebraska law and have discovered that while Neb.Rev.Stat. § 44–359 (1968 Reissue) authorizes attorney fees in certain suits between insured and insurer, it does not apply to the type of insurance contract in question. Riley v. National Auto Insurance Co., 162 Neb. 658, 77 N.W.2d 241 (1956). Under these circumstances the prayer for attorney fees cannot be used to raise the amount in controversy. Cupples Company Manufacturers v. Farmers & Merchants State Bank, 390 F.2d 184 (5th Cir. 1968).

by plaintiff against third-party defendant;[9] (2) even if intervention was the proper procedural device, Babcock was a permissive intervenor and not an intervenor as of right.

Were it not for the jurisdictional question, we would have no hesitancy in denying INA's belated challenge to Babcock's entrance into this suit. No objections were raised at the time of trial to the intervention, the case was tried and a final disposition was made of all the issues raised. However, because subject matter jurisdiction cannot be waived by the parties, conferred by consent or ignored by the court, we examine the question. Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 337 F.2d 24 (8th Cir. 1964).

First we conclude that invocation of Rule 24 was proper. We are not persuaded by the argument that Babcock's intervention was in reality a Rule 14 claim by "plaintiff" against "third-party defendant." Babcock did not file a claim against INA until after the primary litigation between Babcock and Parsons had been laid to rest. The jury had returned a verdict exonerating both parties of liability for damage to crane and derrick, and Babcock's complaint against Parsons had been dismissed with prejudice. Thus there was no longer any relationship between Babcock and INA (through Parsons) which would justify the invocation of Rule 14. In short, Babcock was no longer a "plaintiff" within the meaning of the Rule.

We turn then to the more troublesome question, i.e., was the intervention one of right or permission. Jurisdiction over a claim brought by an intervenor depends on the nature of the intervention. If the intervention is a permissive one the claim must be supported by independent jurisdictional grounds. Hunt Tool Co. v. Moore, Inc., 212 F.2d 685 (5th Cir. 1954); Berbiglia, Inc. v. Cheney, 249 F.Supp. 258 (W.D. Mo. 1965); Olivieri v. Adams, 280 F.Supp. 428 (E.D. Pa. 1968). Wright, Federal Courts § 75, p. 331 (2d ed. 1970); 3B Moore's Federal Practice, ¶24.18[1] (2d ed. 1969). Where intervention is of right, however, the courts and authorities are in substantial agreement that there need be no independent jurisdictional grounds to support the intervenor's claim. Kozak v. Wells, 278 F.2d 104 (8th Cir. 1960); Black v. Texas Employers Insurance Ass'n, 326 F.2d 603 (10th Cir. 1964); Formulabs, Inc. v. Hartley Pen Co., 318 F.2d 485 (9th Cir.), cert. denied, 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275 (1963). See also *Wright* and *Moore, supra.*

Rule 24(a) (2), as amended in 1966, provides that a person is entitled to intervene as a matter of right:

> "[w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action *may as a practical matter impair or impede his ability to protect that interest,* unless the applicant's interest is adequately represented by existing parties." (Emphasis added.)

Permissive intervention under Rule 24(b) (2) is appropriate, "[w]hen an applicant's claim or defense and the main action have a question of law and fact in common."

Careful analysis of the respective claims of Parsons and Babcock reveals, in our view, that Babcock's intervention was permissive rather than as a matter of right. After Parsons amended its

---

9. Rule 14 Fed.R.Civ.P. permits plaintiff to file a claim against the impleaded third-party defendant if the claim arises out of the transaction which is the subject matter of plaintiff's claim against third-party plaintiff. Under this rule, Babcock would seemingly have been entitled to bring this claim against INA during the pendency of the primary litigation.

third-party complaint, the lawsuit between Parsons and INA only involved the liability of INA for attorney's fees expended by Parsons in defending the primary suit. The liability was alleged to rest on either the machinery floater policy or the liability policy. Parsons sought no recovery under either the floater policy or the liability policy for any damages to the crane or derrick. Babcock's claim as a third-party beneficiary rested solely on the floater policy and sought recovery for damage to the crane. The two claims were related only to the extent that they both rested to some degree on the machinery floater policy.[10] As is obvious from the district court's opinion, the principal issues in each of the claims were totally unrelated either legally or factually. Parsons was primarily concerned with proving that Babcock's original complaint had alleged sufficient facts to establish a claim within the coverage of the *liability policy*. Babcock, on the other hand, was faced with establishing that it was a third-party beneficiary of the floater policy.

Assuming arguendo that Babcock had an "interest" in the Parsons-INA suit,[11] that interest would not have been "impaired or impeded by disposition of the [Parsons-INA] action," as required by Rule 24(a) (2). Clearly, disposition of the Parsons claim would not have bound Babcock in the res judicata sense. Indeed, the principal issue in the Babcock suit was totally irrelevant to the Parsons claim. Nor are we directed to any fact which as a practical matter would have deprived Babcock of its claim if it were denied the right to participate in the Parsons-INA proceedings.[12] We are well aware of the fact that the 1966 amendment to Rule 24(a)(2) relaxed the degree to which a party must be affected by disposition of the "action". However, the rule still requires that the intervenor be potentially disadvantaged by disposition of the main action. We can perceive of but two potential common issues of law and fact between Parsons' and Babcock's claims, one whether the machinery floater policy was effective at the time of the accident, the other whether it covered the damage to the crane. INA's answer admitted the first issue, thus, this potential question was resolved in Babcock's favor prior to its intervention. The possibility of the second issue arising in the Parsons-INA suit was re-

10. Although Parsons alleged in its complaint that the floater policy served as some basis for INA's duty to defend, the extent to which Parsons relied on the floater policy may be questioned. Nowhere in the policy was there any mention of a duty on the part of the insurer to defend the insured in suits covered by the policy. When the purpose of the policy is referred to, it becomes quite clear why there would be no such duty for the policy was intended to protect Babcock's own equipment, not indemnify Babcock for damages it caused to other's equipment. It appears that the allegation referring to the floater policy constituted "over-pleading" on Parsons' part.

11. Although not determinative, it is significant in determining Rule 24(a) (2) "interest" to consider whether the would-be intervenor would be a necessary party under Rule 19. One of the purposes of the 1966 amendment of Rule 24 was to make intervention as a matter of right complimentary to Rule 19. See, e. g., Atlantis Development Corp. v. United States, 379 F.2d 818 (5th Cir. 1967). It is doubtful that Babcock would have been considered a Rule 19 necessary party in the Parsons-INA suit.

12. An excellent discussion of the problem of intervention as a matter of right is contained in Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 721, 732 (1968) in which the author gives examples of factors courts have considered practical obstacles to would-be intervenors bringing subsequent claims. None of those examples is to be found in the instant case. In fact, this case seems to come within that category of interventions which Shapiro states have always been considered permissive. *Id.* at 733.

## 542

mote,[13] and its resolution would not establish compelling precedent with respect to the Babcock-INA suit. In sum we believe the impairment question in this case is closely analogous to that before the Second Circuit in Ionian Shipping Co. v. British Law Insurance Co. Ltd., 426 F.2d 186 (2d Cir. 1970). We are in accord with that court's conclusion that the instant circumstances do not constitute an "impairment or impediment" within the meaning of Rule 24(a)(2).

Babcock vigorously argues that, had it not been allowed to intervene, its claim would not have been presented to the court by either of the participating parties.[14] This is undoubtedly true, but we do not believe that it leads to the conclusion that Babcock had a *right* to intervene. It must be shown that failure of the claim to be presented practically impaired or impeded Babcock's ability to protect its interest. Indeed, it would appear that in most cases of *permissive* intervention the would-be intervenor's claim would not be presented to the court absent the intervenor's participation. This fact alone does not constitute "impairment".

In summary, we conclude that Babcock was, at best a permissive intervenor and its claim, lacking the requisite jurisdictional amount, was not cognizable by a federal court. Accordingly, the judgment in favor of Babcock must be and is reversed.

Affirmed in part; reversed in part. Costs to be taxed equally between Babcock and INA.

13. In fact, the issue did not arise in the resolution of the Parsons-INA claim. The district court held that there was no duty to defend embodied in the floater policy, and therefore found it unnecessary to decide whether the floater policy covered Bacock's original claim. As is apparent from the ·district court's judgment, this finding did not impair Babcock's right to recover on the floater policy.

14. Babcock also argues that this fact indicates that its interest would not have

been adequately represented by the existing parties. Having concluded that other elements of Rule 24(a) (2) were not satisfied, we need not reach the "adequacy of representation" issue. However, we observe in passing that to the extent that there were common issues of fact between the two. claims, Babcock was represented by Parsons. The issue of effectiveness of the floater policy was resolved by the pleadings, and Parsons' interest in the floater's coverage was *not* adverse to Babcock's interest in that issue.