**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Emerson David REDSTONE,**
**Defendant-Appellant.**

**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Dale REDSTONE, Defendant-Appellant.**
**Nos. 73–1221 to 73–1224.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1973.

Decided Dec. 3, 1973.

Benjamin C. Pulkrabek, Bismarck, N. D., for appellant Dale Redstone.

C. J. Schauss, Mandan, N. D., for appellant Emerson Redstone.

Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

TALBOT SMITH, Senior District Judge.

The case before us arises out of the stabbing of one Kerry Brunette, allegedly by the Redstone brothers, appellants, and defendant Patrick George Kills Crow. Following jury trial they were convicted in the United States District Court for the District of North Dakota of assault with a dangerous weapon, in violation of 18 U.S.C. § 113(c). Kills Crow and Dale Redstone were sentenced to two years' imprisonment; Emerson Redstone was sentenced to imprisonment for twenty months. Dale Redstone and Emerson Redstone also received concurrent sentences of two years and twenty months, respectively, for violation of the terms of their probation in a previous case. The present appeals are brought by the Redstone brothers from the judg-ments of conviction and from the orders revoking their probation.

Two issues, broadly stated, are presented by these appeals: 1) whether the site of the offense lay within the territorial jurisdiction of the United States; and 2) whether the trial court prejudicially erred in allowing Dale Redstone's wife to testify, albeit in a limited fashion, as a witness for the prosecution.

I.

Jurisdiction of the district court was stipulated by the parties as follows:

> It is stipulated among the parties that this crime, if it was committed at all, was committed within the boundaries of the Fort Lincoln Military Reservation, also known as the United Tribes Training Center, and that the same is under the exclusive jurisdiction of the United States of America.

Appellants now urge that the district court, in fact, lacked jurisdiction. Because subject matter jurisdiction cannot be waived by the parties, conferred by consent or the lack of jurisdictional basis ignored by the court, we examine the question. Baker v. Riss & Co., 444 F.2d 257 (8th Cir. 1971); Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531 (8th Cir. 1970); Roberson v. Harris, 393 F.2d 123 (8th Cir. 1968); Chicago, Burl. & Quincy R. R. v. Willard, 220 U.S. 413, 31 S.Ct. 460, 55 L.Ed. 521 (1911).

In order for an offense to fall within the confines of 18 U.S.C. § 113, it must occur "within the special maritime and territorial jurisdiction of the United States * * *."

"Territorial jurisdiction" is defined elsewhere as, *inter alia,* "any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine,

---

* Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

arsenal, dockyard, or other needful building." 18 U.S.C. § 7(3).

In 1895 North Dakota enacted a statute consenting to purchase of lands for certain purposes by the federal government. The statute, still in effect, reads:

The legislative assembly consents to the purchase or condemnation by the United States of any tract within this state for the purpose of erecting forts, magazines, arsenals, and other needful buildings, upon the express condition that all civil process issued from the courts of this state, and such criminal process as may issue under the authority of this state against any person charged with crime, may be served and executed thereon in the same manner and by the same officers as if the purchase or condemnation had not been made. [10 N.D.C.C. § 54-01-07.]

During the same year, a companion statute,[1] also in force to the present day, was enacted ceding jurisdiction to lands acquired by the federal government for military posts.

■ The offense in question occurred at the United Tribes Training Center, located on the Fort Lincoln Military Reservation in Burleigh County, North Dakota. Fort Lincoln was built on property purchased from Thomas and Sarah J. Mellon by the federal government in 1898. In view of the foregoing statutes, then, it is plain that the offense occurred within the territorial jurisdiction of the United States.

It is true that 40 U.S.C. § 255 provides that "[u]nless and until the United States has accepted jurisdiction over lands hereinafter to be acquired * * *, it shall be conclusively presumed that no such jurisdiction has been accepted." But the presumption against acceptance of jurisdiction in § 255 is applicable only to land acquired subsequent to the 1940 amendment. United States v. Johnson, 426 F.2d 1112 (7th Cir. 1970), cert. denied, 400 U.S. 842, 91 S.

Ct. 86, 27 L.Ed.2d 78 (1970); Markham v. United States, 215 F.2d 56 (4th Cir. 1954), cert. denied, 348 U.S. 939, 75 S. Ct. 360, 99 L.Ed. 735 (1955); United States v. Heard, 270 F.Supp. 198 (W.D. Mo.1967). Prior to 1940, acceptance was apparently presumed in the absence of evidence to the contrary. Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964).

■ The fact that the land leased to the United Tribes Training Center by the federal government is no longer used for military purposes is irrelevant. Humble Pipe Line Co. v. Waggonner, *supra; * Arlington Hotel Co. v. Fant, 278 U.S. 439, 49 S.Ct. 227, 73 L.Ed. 447 (1929); Benson v. United States, 146 U.S. 325, 13 S.Ct. 60, 36 L.Ed. 991 (1892); *cf.* United States v. Heard, *supra.* Jurisdiction has been established.

## II.

Early in the trial it became apparent that the government intended to call Dale Redstone's wife, Corstella Redstone, as a witness for the prosecution, and that Dale Redstone, in that event, would claim his privilege to exclude adverse spousal testimony. Accordingly, the trial judge held an evidentiary hearing out of the presence of the jury to determine the validity of the marriage. Following the presentation of evidence by both sides, the court ruled "that there is, in fact, a marriage; that the privilege does exist; that the privilege of Mr. Dale Redstone has not been waived, and that this witness may not testify against Dale Redstone." In response to the ruling, the government proposed to limit Mrs. Redstone's testimony to the activities of Emerson Redstone and Kills Crow. Dale Redstone objected to the government's suggested procedure on the ground that any testimony of his wife, however limited, would prejudice him. Emerson Redstone and Kills Crow objected on the ground that they were entitled to the

1. 10 N.D.C.C. § 54-01-08.

benefit of Dale Redstone's privilege excluding his wife's testimony and on the ground that her truncated testimony, limited as suggested, would leave the jury with the false impression that only two defendants were present at the Redstone home the night of the offense.

At the evidentiary hearing's end, the trial judge concluded:

> [M]y approach is going to be this: * * * I'm going to leave Dale Redstone in this trial until I hear how the testimony comes out. If at that point I determine * * * that the testimony of Mrs. Redstone is relevant and * * * "has substantial influence or is reasonably likely to have substantial influence on the jury," then I'm going to declare a mistrial of Mr. Redstone * * *.

Shortly before Mrs. Redstone was to be called to the witness stand, counsel and all three defendants met with the trial judge in chambers. The court presented the following instruction which he proposed to read to the jury before Mrs. Redstone testified:

> Corstella Redstone is called by the United States and her testimony may be considered only as evidence affecting the charges against Emerson Redstone and Patrick George Kills Crow. Her evidence may not be considered by you with reference to the charges against Dale Redstone, her husband. She has been instructed to limit her testimony to the conduct of Emerson Redstone and Patrick George Kills Crow. If she should fail to limit it, you are instructed to disregard any testimony she may give insofar as it bears on the charge against Dale Redstone.

Emerson Redstone and Kills Crow immediately renewed their objection that a false impression would be left with the jury if Mrs. Redstone limited her testimony. The trial court conceded that possibility and agreed to confine himself "to an instruction that the jury is to disregard any testimony she may give

insofar as it bears on the charge against Dale Redstone."

Mrs. Redstone was called as a witness, and Dale Redstone objected on the ground of "the husband and wife privilege." The remaining defendants objected "for the reasons stated in Chambers." The court overruled the objections of Emerson Redstone and Kills Crow, found that "the Defendant Dale Redstone is entitled to the benefit of the husband-wife privilege," and instructed the jury as follows:

> Mrs. Corstella Redstone has been called by the United States and her testimony may be considered only as evidence affecting the charges against Emerson Redstone and Patrick George Kills Crow. [H]er testimony may not be considered by you with reference to the charge against Dale Redstone, her husband.

Mrs. Redstone then testified to the activities of Emerson Redstone and Kills Crow at her home the night of the offense. At one point she testified that she had witnessed the two defendants hitting the victim, Kerry Brunette. She also testified that Kills Crow had told her that same evening that Emerson Redstone had stabbed Brunette.

Brunette followed Mrs. Redstone on the witness stand. He testified that all three defendants had beaten him while he was visiting the Redstone home, and that Mrs. Redstone had tried to stop them.

At the close of the government's case, all three defendants moved to strike Mrs. Redstone's testimony. The trial court denied the motion, stating:

> At this stage it is my feeling that the testimony of Mrs. Redstone was so weak and innocuous that when considered in the light of the other testimony it will not have substantial influence on the jury as to the guilt or innocence of Dale Redstone.
>
> I also feel that the testimony of Mrs. Redstone was relevant. The hearsay testimony which she gave was

received without objection and the direct evidence which she testified to was relevant and, therefore, I feel that a motion to strike is not in order.

\* \* \* I feel that the witness demonstrated the pattern that I am accustomed to where you have a relatively young member of the Indian people who was at least emotionally distraught by her experience in the courtroom and who took refuge in either complete silence or a repeated assertion that she did not know, and those are the factors that cause me to say that the testimony was weak.

The common law rule preventing one spouse from testifying for or against the other in criminal cases involved much of "semi-medieval metaphysics" in its early formulation.[2] It was, in effect, not one rule of law but three. *See generally* Note, 38 Va.L.Rev. 359 (1952); Note, 33 Tul.L.Rev. 884 (1959). First, on ground of identity of interest, neither spouse was competent as a witness *for* the other. This principle has since been abrogated in the state by statute

and by decision in the federal courts. Funk v. United States, 290 U.S. 371, 54 S.Ct. 212, 78 L.Ed. 369 (1933). Secondly, neither spouse could appear as a witness *against* the other unless the accused had allegedly committed a crime against the person of the spouse. This rule of privilege against adverse spousal testimony has survived to the present day in the face of widespread and forceful criticism. *See* 8 Wigmore, Evidence § 2228 (McNaughton rev. 1961). The third dimension of the common law rule was a separate and distinct privilege against the disclosure of confidential communications between husband and wife.

The instant case involves only the second of these three principles.

Fed.R.Crim.P. 26, provides in part:

The admissibility of evidence and the competency and privileges of witnesses shall be governed, except when an act of Congress or these rules otherwise provide, by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.[3]

---

2. See 2 Wigmore, Evidence § 601 (3rd ed. 1940).

3. The trial judge in the present case, in recognizing Dale Redstone's privilege to prevent his wife from testifying against him, relied heavily on Rule 505, Proposed Rules of Evidence for United States District Courts and Magistrates, as sent to Congress by the Supreme Court.

Proposed Rule 505 reads:

(a) General rule of privilege. An accused in a criminal proceeding has a privilege to prevent his spouse from testifying against him.

(b) Who may claim the privilege. The privilege may be claimed by the accused or by the spouse on his behalf. The authority of the spouse to do so is presumed in the absence of evidence to the contrary.

(c) Exceptions. There is no privilege under this rule (1) in proceedings in which one spouse is charged with a crime against the person or property of the other or of a child of either, or with a crime against the person or property of a third person committed in the course of committing a crime against the other, or (2) as to matters occurring prior to the marriage, or (3) in proceedings in which a

spouse is charged with importing an alien for prostitution or other immoral purpose in violation of 8 U.S.C. § 1328, with transporting a female in interstate commerce for immoral purposes or other offense in violation of 18 U.S.C. §§ 2421–2424, or with violation of other similar statutes.

According to the Advisory Committee's Note to Proposed Rule 505:

About 30 jurisdictions recognize a privilege of an accused in a criminal case to prevent his or her spouse from testifying. It is believed to represent the one aspect of marital privilege the continuation of which is warranted. In Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed. 2d 125 (1958) it was sustained. *Cf.* McCormick § 66; 8 Wigmore § 2228 (McNaughton Rev.1961): Comment, Uniform Rule 23(2).

The House Subcommittee on Criminal Justice, however, has since adopted an extensively revised draft of the rules and submitted it for comment to the bar and judiciary. The revision eliminates all proposed specific rules on privilege and substitutes a single rule which leaves "the law of privileges in its present state—to be developed by the

The United States Supreme Court, Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958), applying Fed.R.Crim.P. 26 to the privilege against adverse spousal testimony, upheld the privilege, stating:

> While the rule forbidding testimony of one spouse *for* the other was supported by reasons which time and changing legal practices had undermined, we are not prepared to say the same about the rule barring testimony of one spouse *against* the other. The basic reason the law has refused to pit wife against husband or husband against wife in a trial where life or liberty is at stake was a belief that such a policy was necessary to foster family peace, not only for the benefit of husband, wife and children, but for the benefit of the public as well. Such a belief has never been unreasonable and is not now. [(Emphasis in original) 358 U.S. at 77, 79 S.Ct. at 138.]

The continuing validity of the privilege was reiterated in Wyatt v. United States, 362 U.S. 525, 80 S.Ct. 901, 4 L. Ed.2d 931 (1960). Thus there is no doubt as to the present existence and vitality of the privilege against adverse spousal testimony. See United States v. Shipp, 409 F.2d 33 (4th Cir. 1969), cert. denied, 396 U.S. 864, 90 S.Ct. 140, 24 L. Ed.2d 117 (1969); Grulkey v. United States, 394 F.2d 244 (8th Cir. 1968); United States v. Hoffa, 349 F.2d 20 (6th Cir. 1965); Tallo v. United States, 344 F.2d 467 (1st Cir. 1965); Ivey v. United States, 344 F.2d 770 (5th Cir. 1965); Wilkerson v. United States, 342 F.2d 807 (8th Cir. 1965).

In the present case, of course, the trial court recognized the applicability of the privilege, but determined that Corstella Redstone's testimony, limited, apparently by choice of counsel on both sides, to the conduct of the other two defendants, was "so weak and so innocuous that when considered in the light of other testimony it will not have substantial influence on the jury as to the guilt or innocence of Dale Redstone."

■ We disagree. It is our judgment that, under the circumstances of this case, Dale Redstone's privilege against adverse spousal testimony was effectively denied. Nor can we say that Mrs. Redstone's testimony had no substantial influence on the jury verdict as to her husband.

Kerry Brunette, the victim of the offense, plainly testified that he had been attacked by all three defendants at the home of Mrs. Redstone and that she had tried to stop the beating. Mrs. Redstone's testimony, then, confirming Brunette's story as to Kills Crow and Emerson Redstone, must be viewed as equally incriminating to her husband since the jury was well aware that she was prevented from testifying against him by the adverse spousal testimony privilege.

The cautionary instructions, *supra,* of the trial court, delivered both before Mrs. Redstone took the witness stand and at the close of the case, could not lessen the very real risk that the jury was incapable of ignoring the import of her testimony. *See* cases cited in Annot., 90 A.L.R.2d 648 (1963); *cf.* Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Our belief that this conclusion is correct is strengthened by those cases which hold that merely calling an accused's spouse as a witness against him, under certain circumstances, can be so prejudicial as to warrant a reversal of conviction. *See* Tallo v. United States, *supra;* San Fratello v. United States, 340 F.2d 560 (5th Cir. 1965); Annot., 76 A.L.R.2d 920 (1961); *cf.* Grulkey v. United States, *supra.*

Federal courts in accordance with the standard contained in Rule 26 of the Federal Rules of Criminal Procedure." Rules of Evidence Proposed by Subcommittee on Criminal Justice of the House Judiciary Committee, Rule 501, Subcommittee Note (1973), reprinted in 13 Crim.L.Rptr. 3279 (July 18, 1973).

Nevertheless, the government suggests that since Dale Redstone knew that his wife would be called to testify, he should have moved for severance in order to bypass the prejudicial effect of her testimony. We are not persuaded that a defendant be held responsible for anticipating, and taking action to avoid, an erroneous and prejudicial evidentiary ruling on the part of the trial court.

■ Having determined that Dale Redstone's conviction of assault with a dangerous weapon must be reversed, we must also ascertain to what extent the order of the court revoking his probation for a previous offense was dependent upon the conviction. The record reveals that the trial court found "that there has been a violation of the probation in that the Defendant has been convicted * * *." Thus we have no alternative but to also reverse the order revoking Dale Redstone's probation.

■ Emerson Redstone, on the other hand, asserts that the trial court committed prejudicial error as to him by allowing Mrs. Redstone to testify in such a limited fashion, thereby conveying a misleading picture of actual events to the jury. In answer, we first note that it was for this reason the trial court refused to instruct the jury that Mrs. Redstone had been directed to limit her testimony to the conduct of Emerson Redstone and Kills Crow. Although the record is not completely clear in this respect, it appears that the trial court left the scope of Mrs. Redstone's testimony to the parties. Secondly, we fail to see how Mrs. Redstone's testimony in this manner prejudiced Emerson Redstone since Dale Redstone was not acquitted but convicted by the jury. Certainly Emerson Redstone does not suggest that Mrs. Redstone would not have been a proper witness against him had he been tried separately from Dale Redstone.

Judgment of conviction of assault with a dangerous weapon and order revoking probation reversed as to Dale Redstone, affirmed as to Emerson Redstone.